317 F.3d 1072
 Isadora SHAPIRO, by and through her parents and natural guardians, Gary SHAPIRO and Laurie Shapiro, Plaintiff-Appellee,
v.
PARADISE VALLEY UNIFIED SCHOOL DISTRICT NO. 69, Defendant-Appellant.
Isadora Shapiro, by and through her parents and natural guardians, Gary Shapiro and Laurie Shapiro, Plaintiff-Appellant,
v.
Paradise Valley Unified School District No. 69, Defendant-Appellee.
 No. 01-17535.
 No. 01-17554.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 8, 2002.
 Filed January 29, 2003.
 
 COPYRIGHT MATERIAL OMITTED Stephen Walker, Beachwood, OH, for the plaintiff-appellee and cross-appellant.
 Robert D. Haws, Jennings, Strouss & Salmon, P.L.C., Phoenix, AZ, for the defendant-appellant and cross-appellee.
 Appeal from the United States District Court for the District of Arizona; Robert C. Broomfield, District Judge, Presiding. D.C. No. CV-95-02377-RCB.
 Before: TASHIMA, THOMAS and PAEZ, Circuit Judges.
 PAEZ, Circuit Judge.
 
 
 1
 Defendant-Appellant and Cross-Appellee Paradise Valley Unified School District No. 69 ("PVUSD") appeals the district court's ruling that it did not provide Plaintiff-Appellee and Cross-Appellant Isadora Shapiro ("Dorie"), a profoundly deaf seven year old child with a cochlear implant,[1] a free appropriate public education ("FAPE"). The district court determined that the PVUSD violated several procedural mandates required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1487, in creating Dorie's individualized education program ("IEP") and that Dorie's parents were therefore entitled to reimbursement for the costs of sending her to a private out-of-district school. By failing to include a teacher from Dorie's private educational placement and her parents in her June 8, 1994 IEP meeting, the PVUSD denied Dorie a FAPE. We therefore agree with the district court that Dorie's parents are entitled to reimbursement for the costs of sending her to a private out-of-district school for the 1994-1995 school year. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 BACKGROUND
 
 2
 As part of a study on children with cochlear implants, Dorie attended a private, out-of-state school called the Central Institute for the Deaf ("CID") tuition-free for the 1991-1992, 1992-1993, and 1993-1994 school years. In the fall of 1993, as the study's three-year grant period was ending, Dorie's parents approached the PVUSD to seek authorization for her continued placement at CID for the 1994-1995 school year because the PVUSD did not have a program for Dorie in its district.
 
 
 3
 In March 1994, however, the PVUSD obtained permission to create an oral self-contained program[2] for children with hearing impairments at Sonoran Sky Elementary, a PVUSD school located about a mile from the Shapiros' home. The PVUSD notified Dorie's parents about this new program, and on April 13, 1994, representatives from the school district met with Dorie's parents to discuss the appropriateness of the program for Dorie. Dorie's parents expressed concern that the program was not yet "up and running" and that it may not continue past the 1994-1995 school year. Moreover, Dorie was the only child with a cochlear implant identified for the program.
 
 
 4
 The parties agreed to meet again on May 4, 1994, to continue to discuss the proposed program at Sonoran Sky Elementary. During the May 4 meeting, the district psychologist began drafting an IEP for Dorie. At the conclusion of the meeting, Dorie's parents expressed concern that the PVUSD had not yet hired a classroom teacher, that in the draft IEP the district had not specified related services to which Dorie would have access, and that Dorie would be a "guinea pig" in the PVUSD's new program. They again requested a placement at CID, which the PVUSD rejected, stating that the program at Sonoran Sky would be appropriate for Dorie.
 
 
 5
 The district's refusal to place Dorie at CID prompted Dorie's parents to initiate a due process hearing to determine Dorie's school placement for the 1994-1995 school year. Prior to the hearing, the PVUSD notified Dorie's parents that it planned to convene a meeting on June 8, 1994, to develop an IEP for Dorie. In response, Dorie's mother informed the district that she and her husband would be unavailable to meet on June 8 and requested a postponement. The PVUSD claimed it could not postpone the meeting because at least two of its IEP team members would be unavailable to meet after June 10.
 
 
 6
 The PVUSD convened a meeting on June 8, 1994, without Dorie's parents or a representative from CID. At the meeting, the district representatives drafted an IEP relying solely on information they had gathered from prior meetings with Dorie's parents. The PVUSD did not independently evaluate Dorie.
 
 
 7
 After the due process hearing began, Dorie's parents enrolled her at CID for the 1994-1995 school year and the PVUSD commenced its program at Sonoran Sky Elementary.
 
 PROCEDURAL HISTORY
 
 8
 The hearing officer concluded that the oral self-contained program at Sonoran Sky Elementary complied with the IDEA and that under the stay-put provision of the IDEA, 20 U.S.C. § 1415(e)(3), the district had to reimburse Dorie's parents for the costs of educating Dorie at CID for the 1994-1995 school year. Dorie's parents appealed this decision to the Arizona Department of Education. The state appellate hearing officer affirmed the hearing officer's decision that the PVUSD's oral self-contained classroom provided Dorie with a FAPE but reversed the decision regarding reimbursement.
 
 
 9
 Dorie's parents then commenced this action. The district court issued an order reversing the decision of the appellate hearing officer. The district court held that the PVUSD violated the IDEA by not including Dorie's parents and a representative from CID at the June 8 IEP meeting and by not including information about both Dorie's present educational levels and measures for evaluating whether her instructional objectives had been achieved. In addition, the district court held that Dorie's parents were entitled to reimbursement for the costs of sending Dorie to CID for the 1994-1995 school year if CID provided an "appropriate education" for Dorie.[3] It remanded to the Arizona Department of Education (who referred the matter to an ALJ) for a determination of this issue and terminated the action.
 
 
 10
 The PVUSD appealed the district court's decision. In a per curiam decision, we held that the district court incorrectly terminated the action when it remanded to the state hearing officer to decide whether CID provided an appropriate education for Dorie. Shapiro v. Paradise Valley Unified Sch. Dist., 152 F.3d 1159, 1160 (9th Cir.1998). We vacated the district court's order of termination and remanded to the district court to stay the proceedings pending the ALJ's decision.
 
 
 11
 On November 16, 2000, the ALJ ruled that CID provided Dorie with an appropriate program "reasonably calculated to provide [her] with educational benefit." The PVUSD challenged this decision in the district court and also sought reconsideration of the district court's initial ruling.
 
 
 12
 The district court rejected all of the PVUSD's arguments and reaffirmed its earlier ruling. The court entered judgment for the Shapiros in the amount of $23,804 on November 1, 2001. It is from this judgment that the PVUSD appeals and the Shapiros cross-appeal.
 
 STANDARD OF REVIEW
 
 13
 We review the district court's findings of fact for clear error and review de novo its conclusions of law. Amanda J. v. Clark County Sch. Dist., 267 F.3d 877, 887 (9th Cir.2001). We also review de novo the question of whether a school district's individualized education program provides a free appropriate public education. Id.
 
 DISCUSSION
 I.
 
 14
 We agree with the district court that the PVUSD violated the IDEA's[4] procedural mandates in its development of Dorie's June 8 IEP, and thereby denied Dorie a FAPE, by not including a representative from CID or Dorie's parents at the June 8 meeting. We address each procedural error in turn.
 
 A. Teacher Participation
 
 15
 The IDEA requires that "the teacher" participate in the formation of a child's IEP. 20 U.S.C. § 1401(a)(20). Dorie's parents and the PVUSD disagree about which teacher should have attended the June 8 IEP meeting. Dorie's parents argue that the school district violated the IDEA by not including a representative from CID at the meeting. In contrast, the PVUSD contends that it was not necessary to include a representative from CID at the meeting, and that it complied with IDEA by including the speech pathologist and the hearing impaired instructor from its newly-created program at Sonoran Sky Elementary. We agree that the PVUSD violated the IDEA by not including a representative from CID at the June 8 IEP meeting.
 
 
 16
 We have held that a school district's failure to include a representative from a private school that a child is currently attending violates the procedural mandates of the IDEA. See W.G. v. Bd. of Trustees, 960 F.2d 1479, 1484 (9th Cir. 1992) (holding that the formation of the child's IEP was procedurally flawed because the district "was required to ensure participation by the private school [in which the child was enrolled] in the formulation of the IEP" (citation omitted)). IDEA requires the persons most knowledgeable about the child to attend the IEP meeting. Id.; see also 34 C.F.R. § 300.533. The PVUSD made no attempt to include a representative from CID at the June 8 IEP meeting. As a result, the teachers most knowledgeable about Dorie's special education levels and needs did not attend the meeting, in violation of the IDEA.
 
 
 17
 The PVUSD argues that the IDEA, 20 U.S.C. § 1401(a)(20), requires "a teacher" to participate in the development of an IEP and that by including "two qualified and credentialed teachers of the hearing impaired" at the June 8 IEP meeting, it was in compliance with the Act. According to § 1401(a)(20), "the teacher," not "a teacher," must be included in the development of the IEP. The PVUSD's interpretation of this statutory provision conveys too broad a meaning to the word "teacher," a meaning inconsistent with the statute.
 
 
 18
 The implementing regulation for § 1401(a)(20) helps clarify what is meant by "the teacher":
 
 
 19
 In deciding which teacher will participate in meetings on a child's IEP, the agency may wish to consider the following possibilities: (a) For a child with a disability who is receiving special education, the teacher could be the child's special education teacher. If the child's disability is a speech impairment, the teacher could be the speech-language pathologist; (b) For a child with a disability who is being considered for placement in special education, the teacher could be the child's regular teacher, or a teacher qualified to provide education in the type of program in which the child may be placed, or both. ...
 
 
 20
 34 C.F.R. § 300.344, Note 1. Because Dorie had been receiving special education services at CID at the time of the June 8 IEP, subdivision (a) applies here.[5] Under subdivision (a), either Dorie's special education teacher or her speech-language pathologist should have been present at the IEP meeting. Dorie received special education at CID, not in the PVUSD, so, contrary to the PVUSD's assertion, the only teachers who met the subdivision (a) criteria were her CID instructors.
 
 
 21
 The PVUSD also argues that our decision in Clyde K. v. Puyallup School District, No. 3, 35 F.3d 1396 (9th Cir.1994), requires reversal of the district court's judgment. We disagree. In Clyde K., we recognized that subdivision (b) allows school districts to satisfy the terms of the IDEA by including a "future" teacher at an IEP meeting. Id. at 1400. We did not so hold regarding subdivision (a), and because we conclude that subdivision (a) applies in this case given that Dorie had been receiving special education services at CID, Clyde K.'s discussion of "future" teachers with regard to subdivision (b) is not on point.
 
 B. Parent Participation
 
 22
 As noted, the district court held that the PVUSD's failure to include Dorie's parents at the June 8 IEP meeting was a violation of the IDEA. We agree.
 
 
 23
 The importance of parental participation in the IEP process is evident. See 20 U.S.C. § 1401(a)(20) (inclusion of parents in IEP team); 34 C.F.R. § 300.344(a)(3) (same); Amanda J., 267 F.3d at 892 ("Procedural violations that interfere with parental participation in the IEP formulation process undermine the very essence of the IDEA."). As the Supreme Court made clear in Board of Education v. Rowley:
 
 
 24
 It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process ... as it did upon the measurement of the resulting IEP against a substantive standard.
 
 
 25
 458 U.S. 176, 205-06, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (internal citations omitted).
 
 
 26
 The PVUSD argues that despite the IDEA's emphasis on parental participation in the IEP formulation process, the IDEA does not require parents to attend every IEP meeting. It relies on 34 C.F.R. § 300.345(d) for this proposition. This regulation states that "[a] meeting may be conducted without a parent in attendance if the public agency is unable to convince the parents that they should attend." According to the PVUSD, because Dorie's mother chose not to attend the June 8 IEP meeting but had a sufficient opportunity to do so, it was acceptable to hold the meeting without her. The PVUSD misinterprets § 300.345.
 
 
 27
 Under the regulation, before it can hold an IEP meeting without a child's parents, the school district must document phone calls, correspondence, and visits to the parents demonstrating attempts to reach a mutually agreed upon place and time for the meeting. 34 C.F.R. § 300.345(d)(1)(3). Here, the Shapiros asked to reschedule the June 8 IEP meeting; they did not refuse to attend. The PVUSD's reliance on § 300.345 therefore misses the mark. The school district simply prioritized its representatives' schedules over that of Dorie's parents.
 
 
 28
 The PVUSD also contends that Dorie's parents contributed adequately to the June 8 IEP because the PVUSD mailed the IEP to them for their approval and they participated in prior IEP meetings. We disagree. The IDEA "imposes upon the school district the duty to conduct a meaningful meeting with the appropriate parties." W.G., 960 F.2d at 1485 (emphasis added). We have made clear that those individuals, like Dorie's parents, "who have first-hand knowledge of the child's needs and who are most concerned about the child must be involved in the IEP creation process." Amanda J., 267 F.3d at 891 (emphasis added). After-the-fact parental involvement is not enough. Nor does the PVUSD's inclusion of the Shapiros in certain parts of the process excuse the district's failure to include the Shapiros in the June 8 IEP meeting; involvement in the "creation process" requires the PVUSD to include the Shapiros unless they affirmatively refused to attend. By proceeding with the June 8 IEP meeting without Dorie's parents, the PVUSD violated the IDEA.[6]
 
 II.
 
 29
 We engage in a two-part inquiry to determine whether the PVUSD afforded Dorie a FAPE. First, we must determine whether the PVUSD complied with the procedures set forth in the IDEA. Second, we must determine whether the IEP developed through the IDEA's procedures was reasonably calculated to confer educational benefit upon Dorie. Rowley, 458 U.S. at 206-07, 102 S.Ct. 3034; Amanda J., 267 F.3d at 890; Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir.1995).
 
 
 30
 We agree with the district court's ruling that the PVUSD's violations of the IDEA's procedural mandates resulted in lost educational opportunity for Dorie. We have held that:
 
 
 31
 Procedural flaws do not automatically require a finding of a denial of a FAPE. However, procedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of a FAPE.
 
 
 32
 W.G., 960 F.2d at 1484 (internal citations omitted); see also id. (holding that the school district did not provide a FAPE because it failed to comply with procedures for preparing an IEP such as parental and teacher involvement); Amanda J., 267 F.3d at 894 (holding that there was denial of a FAPE where the school district did not provide the parents with records indicating their child had autism and suggesting the need for additional testing). The PVUSD's failure to include the persons most knowledgeable about Dorie's educational levels and needs — namely, a representative from CID and Dorie's parents — at the June 8 IEP meeting and its concomitant creation of a defective IEP resulted in lost educational opportunity for Dorie.
 
 
 33
 Because we conclude that the PVUSD's procedural violations of the IDEA resulted in a loss of educational opportunity for Dorie, it is unnecessary for us to address the second prong of the FAPE analysis. See Amanda J., 267 F.3d at 895 (declining to address the question of whether the proposed IEP was "reasonably calculated to enable [the child] to receive educational benefits" because the school district failed to comply procedurally with the IDEA); W.G., 960 F.2d at 1485 (same). On the basis of the first prong of the FAPE two-part inquiry, which is a procedural analysis, we conclude that the PVUSD denied Dorie a FAPE.
 
 III.
 
 34
 The Supreme Court noted in School Committee of Burlington v. Department of Education that parents who "unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." 471 U.S. 359, 373-74, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). "They are entitled to reimbursement only if a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act." Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993) (discussing Burlington). In so holding, the Court noted that under 20 U.S.C. § 1415(e)(2), a court may "grant such relief as the court determines is appropriate," which includes "equitable" solutions such as reimbursing parents for the costs of a private placement. Burlington, 471 U.S. at 369, 105 S.Ct. 1996; see also Carter, 510 U.S. at 15-16, 114 S.Ct. 361 (agreeing with the reasoning in Burlington); Union Sch. Dist. v. Smith, 15 F.3d 1519, 1527 (9th Cir.1994) (holding that the parents were entitled to reimbursement for tuition at a private clinic in which they unilaterally placed their child because the school district failed to offer the child an appropriate placement and the parents' placement at the private clinic was appropriate); W.G., 960 F.2d at 1486 (noting that parents were "not barred as a matter of equity from recovering" reimbursement of private tutoring expenses because the school's proposed public placement violated the IDEA).
 
 
 35
 The district court affirmed the ALJ's decision that Dorie's program at CID for the 1994-1995 school year was "reasonably calculated to provide [Dorie] with educational benefit" and therefore provided her with an "appropriate education during the 1994-1995 school year."[7] Because CID was an educationally appropriate placement for Dorie and the June 8 IEP denied her a FAPE, the Shapiros are entitled to reimbursement for the costs of educating Dorie at CID for the 1994-1995 school year.[8] See Seattle Sch. Dist., No. 1 v. B.S., 82 F.3d 1493, 1502 (9th Cir.1996) (awarding reimbursement to parents because the school district failed to provide child with a FAPE whereas private educational placement provided child with appropriate educational benefit); Wartenberg, 59 F.3d at 895-97 (same); Ash v. Lake Oswego Sch. Dist., No. 7J, 980 F.2d 585, 590 (9th Cir.1992) (same). Accordingly, we affirm the district court's judgment awarding $23,804 to the Shapiros.
 
 CONCLUSION
 
 36
 For the foregoing reasons, the district court did not err in entering judgment in favor of Plaintiff-Appellee and Cross-Appellant, who shall recover her costs on appeal from the PVUSD.
 
 
 37
 Appeal No.01-17535 is AFFIRMED.
 
 
 38
 Appeal No. 01-17554 is DISMISSED.
 
 
 
 Notes:
 
 
 [1]
 A cochlear implant is a "device for treating severe deafness that consists of one or more electrodes implanted by surgery inside or outside the cochlea (an organ in the inner ear that transforms sound vibrations into nerve impulses for transmission to the brain) ... [As the electrodes are implanted], a miniature receiver is implanted under the skin, either behind the ear or in the lower part of the chest. A wire connecting the electrodes to the receiver is implanted at the same time. Directly over the implanted receiver, the patient wears an external transmitter, which is connected to a sound processor and a microphone." American Medical Association,Encyclopedia of Medicine 286 (1989).
 
 
 [2]
 In his findings of fact, the hearing officer noted that "oral education" relies solely on speech language and lip reading. It contrasts with "total communication," which teaches both sign language and speech language. Dorie's parents wanted her to receive oral education
 
 
 [3]
 The district court concluded that IDEA's stay-put provision, 20 U.S.C. § 1415(e)(3), did not mandate reimbursement
 
 
 [4]
 This case involves Dorie's educational placement for the 1994-1995 school year. The statutory and administrative provisions of the IDEA in effect at that time therefore apply
 
 
 [5]
 We disagree with the PVUSD that subdivision (b) applies. It is true that Dorie was being considered for the first time for special education in the PVUSD, but she was still a child "who [was] receiving special education" rather than a child "who [was] being considered for placement in special education" because she already received special education services from CID
 
 
 [6]
 We also agree with the district court that the PVUSD violated the IDEA's substantive requirements by failing to include in its draft IEP a statement of Dorie's present educational levels and procedures for determining whether the instructional objectives had been achievedSee 20 U.S.C. § 1401(a)(2)(C) (requiring that an IEP contain "a statement of the specific educational services to be provided to such child"); 20 U.S.C. § 1401(a)(20)(F) (requiring that an IEP contain "appropriate objective criteria and evaluation procedures and schedules for determining... whether instructional objectives are being achieved"). The PVUSD argues that it did not include a statement of Dorie's present educational levels because CID was delinquent about providing Dorie's educational records in response to its requests, but this is inconsistent with its statutory obligation. See 20 U.S.C. § 1412(2)(C); 34 C.F.R. § 300.531 ("Before any action is taken with respect to the initial placement of a child with a disability in a program providing special education and related services, a full and individual evaluation of the child's educational needs must be conducted. ..."). Because we conclude, however, that the PVUSD violated the IDEA's procedural mandates by failing to include a representative from CID and Dorie's parents at the June 8 IEP meeting, which contributed significantly to its creation of a defective IEP and denied Dorie a FAPE, we need not address the PVUSD's substantive violations of the IDEA.
 
 
 [7]
 The PVUSD contends that Dorie's parents did not timely raise the reimbursement issue, so the ALJ should have considered it waived. The district court rejected this argument. In light of the evidentiary record, we conclude that the district court's finding was not clearly erroneous
 
 
 [8]
 Because we affirm the district court's ruling that Dorie's parents are entitled to reimbursement, we need not reach the issues on cross-appeal of whether Dorie's parents are entitled to reimbursement under the IDEA's stay-put provisions and whether the district court should have considered Carla Zimmerman's (a speech and language pathologist retained by the PVUSD to evaluate Dorie and the district's proposed program) testimony. Accordingly, we dismiss the Shapiros' cross-appeal as moot