**W.G.; B.G., individually and as parents of R.G., a minor, Plaintiffs–Appellees,**

v.

**BOARD OF TRUSTEES OF TARGET RANGE SCHOOL DISTRICT NO. 23, MISSOULA, MONTANA, Defendant–Appellant.**

No. 91–35286.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1991.

Withdrawn from Submission Nov. 8, 1991.

Resubmitted March 31, 1992.

Decided April 7, 1992.

Michael W. Sehestedt, Deputy Co. Atty., Missoula, Mont., for defendant-appellant.

Andree Larose, Montana Advocacy Program, Helena, Mont., for plaintiffs-appellees.

Before: WALLACE, Chief Judge, HUG, and RYMER, Circuit Judges.

HUG, Circuit Judge:

The Board of Trustees of Target Range School District No. 23, in Missoula, Montana, appeals from the decision of the district court, holding that procedural flaws in the formulation of an individualized education program resulted in the denial of a FAPE, under the Education for All Handicapped Children Act ("Act"), 20 U.S.C. § 1401 et seq.,[1] and that the tutoring sub-

1. The Act was amended by the Education of the Handicapped Act Amendments of 1990, Pub.L. No. 101–476, 104 Stat. 1103 (1990), and is now referred to as the Individuals with Disabilities

sequently obtained for R.G. by his parents was an appropriate alternative for which the school district must reimburse the parents. We affirm.

### I.

W.G. and B.G. are the parents of R.G., a minor child who has a significant specific learning disability. They reside in the Target Range School District in Montana.

R.G. attended Target Range School until he completed his fifth grade year. Despite occasional testing that revealed a discrepancy between R.G.'s intellect and his extremely poor academic performance, R.G.'s learning disability was not diagnosed by Target Range. During his first year, R.G. received language therapy. When he was in fifth grade, he was referred to the Chapter I reading program and received some "resource room" assistance with his homework. His teachers attributed his problems primarily to poor attention, forgetfulness, and behavior problems.

R.G. was required to stay after school to complete his work, and he spent most evenings and weekends during his fifth grade year working on his studies. As a result of his problems in school, R.G. suffered low self-esteem throughout his years at Target Range School, and he began to suffer from physical symptoms of stress, such as gastrointestinal pain and insomnia, in the spring of his fourth grade year. During R.G.'s fifth grade year, his mother worried that he was suicidal.

In 1985, B.G. requested an independent evaluation for R.G. The evaluation resulted in a diagnosis of a significant specific learning disability related to the manner in which R.G. processed information. Upon receipt of the independent evaluation, Target Range School convened a Child Study Team ("CST") meeting on May 23, 1985.

The team refused to identify R.G. as learning disabled and to develop an Individualized Educational Program ("IEP") for him at that time, although the team agreed to continue to provide schoolwork assistance for R.G. in the school resource room. Following an inquiry by B.G. about the criteria for determining the existence of a specific learning disability, the Montana Office of Public Instruction informed Target Range School on May 31, 1985, that the determination of a learning disability could be made only by a CST.

W.G. and B.G. then decided to enroll R.G. at St. Joseph Elementary School, a private school located outside the Target Range School District, in the fall of 1985.

Target Range did not attempt to reconvene or establish a CST for R.G. until 1987, after St. Joseph School conducted psychological tests on R.G. and a St. Joseph School CST found R.G. to be learning disabled. The Target Range School principal and the Target Range School psychologist attended the St. Joseph CST meeting. The Target Range School principal agreed with the CST that R.G. was learning disabled, and arranged an October 5, 1987, meeting of representatives from both schools to develop an IEP for R.G. R.G.'s parents told Target Range officials that they would arrange for attendance by St. Joseph School officials. However, the St. Joseph participants were unable to attend.

Despite their absence, the Target Range principal proceeded with the October 5 meeting and presented a prepared IEP for R.G., which called for application of the program used at that time at Target Range, the Scott Foresman Focus program. W.G. and B.G. expressed concern about that program and requested that the school use "direct instruction" materials as recommended by the St. Joseph school psychologist and special education teacher.[2] How-

---

Education Act. Pub.L. No. 101–476, Title IX, § 901(a)(3), 104 Stat. 1142. References in this opinion are to the Act as numbered prior to the 1990 amendments.

**2.** The direct instruction materials were described by one expert witness at the administrative hearing as a very structured, carefully sequenced curriculum designed for "learning by

being more accurate rather than guessing and using context information in order to draw conclusions." The Scott Foresman Focus Program was described as a "context" approach designed for developmental learning, as opposed to the kind of remediation needed by R.G. *Id.* at 28–30.

ever, the team did not discuss alternatives to the Foresman program and the St. Joseph school representatives were not present to discuss the appropriateness of the materials.

W.G. and B.G. refused to sign the partially completed IEP and presented the principal with a list of ten factors that they wished to have included in the IEP. Those factors were:

1) Resource service provided at St. Joseph School following their school calendar, effective immediately.

2) Resource service to consist of: Reading Mastery IV or V, depending on a placement test, Expressive Writing 1, Spelling Mastery Level C or D, depending on a placement test.

3) Minimum of 2 hours per day, 5 days per week, to correlate with St. Joseph schedule (to include the Language Block).

4) Minimum 2 hours to consist of: Reading Mastery 30–45 min., Expressive Writing 1—30 min., Spelling Mastery Level C or D 30 min., and tutoring in Social Studies, Science and Math as needed 20 min. per day, 5 days per week.

5) Resource Room ratio of no more than 3–1 with other grade-related students.

6) All meetings and future placement testing regarding R.G. to take place at St. Joseph School.

7) R.G. should be given the choice of a written or oral test. This test should be administered during his related class period. He should be given the choice of written or oral questions and written or oral answers.

8) R.G. should receive a report card showing letter grades adjusted in relation to his learning disability. A formal pass/fail report card is to be included in his school records with a copy to the parents. R.G.'s grading system should reflect his accountability to accomplish 50% of the required work at this time. The Resource teacher will coordinate with the St. Joseph staff in developing the grading system and assigning grades.

9) Classroom instruction for R.G. will be developed and coordinated between the Resource teacher and the affected staff. For example: developing what 50% of the course material R.G. will be responsible for.

10) Develop short-term instructional objectives to be reviewed at the end of this school quarter (Oct. 30, 1987).

The principal told W.G. and B.G. that he would respond to their list within a short period. The principal responded specifically by letter only to the request that services be provided at St. Joseph School, or that transportation to Target Range School from St. Joseph School be provided for R.G. Target Range informed W.G. and B.G. that Target Range School District did not have a duty to comply with their requests but that R.G. was welcome to have his IEP administered at Target Range School. As a result, W.G. and B.G. obtained private instruction for R.G. that used the instruction methods recommended by the St. Joseph CST. Target Range School did not attempt to continue the October 5, 1987, meeting in order to develop an IEP in compliance with statutory requirements.

W.G. and B.G. filed a complaint with the Montana Office of Public Instruction and requested reimbursement for the private tutoring they obtained for R.G. during the 1987–88 school year. The hearing examiner denied the request, holding that Target Range had offered R.G. a free appropriate education that W.G. and B.G. had chosen not to accept, and that W.G. and B.G.'s unilateral placement of R.G. with an insufficiently trained tutor was not an appropriate placement reasonably calculated to enable R.G. to receive educational benefits according to *Board of Educ. v. Rowley,* 458 U.S. 176, 206–07, 102 S.Ct. 3034, 3050–51, 73 L.Ed.2d 690 (1982).

W.G. and B.G. appealed the decision of the administrative hearing officer to the United States District Court, which had jurisdiction to review the decision of the state agency and to hear additional evi-

dence under 20 U.S.C. § 1415(e)(2), (4). Relying on *Hall by Hall v. Vance County Bd. of Educ.*, 774 F.2d 629, 635 (4th Cir.1985), the district court held that Target Range failed to provide R.G. with a free, appropriate education, as required by the Education of the Handicapped Act, because the IEP was not developed in accordance with the Act. The court also found that the tutoring arranged by W.G. and B.G. was sufficient to provide R.G. with an appropriate education. The court ordered Target Range to reimburse W.G. and B.G. for the tutoring provided to R.G. during the 1987–88 school year.

Target Range timely appeals. We have jurisdiction to review the final judgment of the district court under 28 U.S.C. § 1291.

## II.

█ This court reviews the district court's findings of fact for clear error. *Gregory K. v. Longview School Dist.*, 811 F.2d 1307, 1310 (9th Cir.1987). The district court's conclusions of law are reviewed *de novo*. *Id.* Whether the school district's proposed IEP was a "free appropriate public education," as required by the Education for All Handicapped Children Act, amended as the Individuals with Disabilities Education Act, is a mixed question of law and fact that we review *de novo*. *Id.* Whether a special education placement is appropriate is reviewed *de novo*. *Id.* at 1314. The deference due state administrative findings on matters that we review *de novo* is a matter for the discretion of this court. *Id.* at 1311.

## III.

### A. *The Act*

█ The Act, as amended by Individuals with Disabilities Education Act ("IDEA"), assures all handicapped children a free appropriate public education ("FAPE") through individualized education programs. *See* 20 U.S.C. § 1400(c). To receive federal funds for educating handicapped children, states must comply with the provisions of the Act. 20 U.S.C. §§ 1412, 1414(b)(2)(A), 1416. Montana law echoes the require-

ments of the Act. *See* Mont.Code Ann. § 20–7–401 *et seq.* State standards that are not inconsistent with federal standards are also enforceable in federal court. *See Gregory K.*, 811 F.2d at 1311–12; *see also Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 987 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991).

The Act requires states and local education agencies to guarantee procedural safeguards for handicapped children and their parents in the provision of a FAPE. 20 U.S.C. § 1415(a). Central among the safeguards is the process of developing an "individualized education program" ("IEP") for each child. 20 U.S.C. §§ 1401(a)(18)(D), 1412(1); *Rowley*, 458 U.S. at 181, 102 S.Ct. at 3038; *see also Roland M.*, 910 F.2d at 987.

An IEP is a written statement for a disabled child developed in a meeting by a representative of the local educational agency who is qualified "to provide, or supervise the provision of, specially designed instruction," the child's regular classroom teacher, the parents, and the child, if appropriate. 20 U.S.C. § 1401(a)(19); *see also* Mont.Admin.R. 10.-16.1207. The IEP includes an assessment of the present performance of the child, a statement of annual goals and short-term instructional objectives, specific services to be provided, the extent to which the child can participate in regular educational programs, the projected initiation date and anticipated duration, and the procedures for determining whether the instructional objectives are achieved. 20 U.S.C. § 1401(a)(19). The Act provides for parental participation and even for cooperation with parochial schools in the formulation of an IEP. 20 U.S.C. §§ 1413(a)(4)(A), 1415; 34 C.F.R. §§ 300.345, 300.348.

The Act also provides for review of administrative determinations. 20 U.S.C. § 1415(e)(2). The reviewing court first must examine whether the state has complied with the procedures established by the Act, and then must determine whether the IEP is reasonably calculated to enable the child to receive educational benefits.

*Rowley,* 458 U.S. at 206–07 & n. 27, 102 S.Ct. at 3050–51 & n. 27.

█ Procedural flaws do not automatically require a finding of a denial of a FAPE. However, procedural inadequacies that result in the loss of educational opportunity, *Burke County Bd. of Educ. v. Denton,* 895 F.2d 973, 982 (4th Cir.1990), or seriously infringe the parents' opportunity to participate in the IEP formulation process, *Roland M.,* 910 F.2d at 994; *Hall,* 774 F.2d at 635, clearly result in the denial of a FAPE.

### B. *Compliance*

█ Target Range School District argues that the district court made a clearly erroneous finding that procedural error in the formulation of the IEP denied R.G. a FAPE. Specifically, Target Range objects to the court's finding that Target Range prepared an IEP prior to the IEP meeting, rather than developing the IEP according to the procedures set forth in the IDEA. Although Target Range admits other procedural flaws in the IEP, it argues that the procedural requirements of the Act should be interpreted broadly and that the overriding goal of parental participation in the IEP process was served. We disagree.

Target Range clearly did not comply with the procedures required by the IDEA. The district court found that Target Range independently developed the IEP that it presented to W.G. and B.G., without the input and participation of W.G. and B.G., R.G.'s regular classroom teacher, or any representative of St. Joseph School, in direct violation of 20 U.S.C. § 1401(a)(19). The record supports the findings of the district court.

Target Range proposed an IEP that would place R.G. in a preexisting, predetermined program. At the IEP meeting, the Target Range special education teacher advocated use of the Scott Foresman Focus Program, and no alternatives to that program were considered despite the objections of W.G. and B.G. W.G. testified that the district assumed a "take it or leave it" position at the meeting.

Even if the district court's finding that the school prepared the report were disregarded, other significant procedural errors existed and were admitted by Target Range. The school failed to make efforts to include R.G.'s teacher in the process, as required by 34 C.F.R. § 300.344. Because R.G. was enrolled in a parochial school, Target Range was required to ensure participation by the private school in the formulation of the IEP. 34 C.F.R. § 300.348. Target Range made no effort to do so after its initial delegation of the duty to invite the parochial school representative to the October 5, 1987, IEP meeting.

As a result, in its decision to place R.G. in special education classes at Target Range and in the particular program there, Target Range did not consider the recommendations of persons "knowledgeable" about R.G., as required by 34 C.F.R. § 300.533. *See Taylor by Holbrook v. Bd. of Educ.,* 649 F.Supp. 1253, 1256–58 (N.D.N.Y.1986) (where school district failed to consider recommendations of persons "most knowledgeable" about the child, including his teacher and doctors, the IEP was not reasonably calculated to enable child to receive education benefits). Target Range did not attempt to reconvene the meeting in order to include the required participants.

Target Range's failure to secure the participation of St. Joseph School personnel also resulted in violations of section 1414(a)(1), which requires preparation of a comprehensive evaluation of the student as a basis for developing the IEP, and section 1401(a)(19) which specifies the elements necessary for a complete IEP.

While rigid "adherence to the laundry list of items given in section 1401(19)" is not paramount, *see Doe v. Defendant I,* 898 F.2d 1186, 1190–91 (6th Cir.1990), we are not in this case concerned with a complete IEP prepared otherwise according to the requirements of the Act. *See id.* at 1189–90 (although the IEP document did not include two of the § 1401(a)(19) factors, IEP not invalid, because all information required by § 1401(a)(19) was well known to the administrators and the parents, who,

with other required parties, had participated fully in the development of the IEP).

When a district fails to meet the procedural requirements of the Act by failing to develop an IEP in the manner specified, the purposes of the Act are not served, and the district may have failed to provide a FAPE. The significance of the procedures provided by the IDEA goes beyond any measure of a child's academic progress during the period at issue. As the Court in *Rowley* said, "Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation" at every step "as it did upon the measurement of the resulting IEP." *Rowley*, 458 U.S. at 205–06, 102 S.Ct. at 3050–51.

Target Range's arguments that the parents are to blame because they left the IEP meeting, did not file a dissenting report, and led the district to believe that the principal problem was transportation, are without merit. The parents had no obligation to file a dissent. The school district was well aware of their concerns, which ranged from specific methodologies and student-teacher ratios to transportation and the location of special education services, as outlined in detail in the document W.G. and B.G. gave to the Target Range School principal at the October 5, 1987, meeting.

The Act imposes upon the school district the duty to conduct a meaningful meeting with the appropriate parties. Target Range failed to do so. Target Range failed to fulfill the goal of parental participation in the IEP process and failed to develop a complete and sufficiently individualized educational program according to the procedures specified by the Act.

In holding that the procedural defects in the development of the IEP resulted in denying R.G. a FAPE, the district court relied on *Hall*, 774 F.2d at 635. There the Fourth Circuit wrote that a school district's failure to inform parents of their procedural rights and the availability of public funding, and its failure to develop an IEP with the specificity required by 20 U.S.C. § 1401(a)(19), were adequate grounds for holding under *Rowley* that the school had

failed to provide a FAPE. *See id.* The decision in *Hall* did not rest on the procedural errors alone, because the court found that the services actually provided to the child were not reasonably calculated to enable him to receive educational benefits. *See* 774 F.2d at 635. No IEP was completed and offered to R.G., and no services were actually provided to R.G., so we are concerned primarily with the first part of the *Rowley* test: procedural compliance.

Target Range contends that a later Fourth Circuit case, *Denton*, 895 F.2d at 982, stands for the proposition that only those procedural faults that cause a student loss of benefits result in a denial of a FAPE. We disagree. *Denton* involved comparatively minor procedural violations. *See Denton*, 895 F.2d at 982. The IEP in *Denton* was not prepared within the period provided by North Carolina law because the school awaited updated evaluations from the student's former school. 895 F.2d at 976. A complete IEP was presented four days after the school received the evaluations. *Id.* The Fourth Circuit held that the Board's procedural failure in that case did not deprive the child of educational benefits and did not deny him a FAPE. *Id.* at 982.

Because we hold that Target Range failed to develop the IEP according to the procedures required by the Act and by Montana law, we need not address the question of whether the proposed partial IEP was reasonably calculated to enable R.G. to receive educational benefits. *See Rowley*, 458 U.S. at 201, 204–05, 102 S.Ct. at 3048, 3049–50; 20 U.S.C. § 1401(a)(19).

## IV.

Target Range contends that W.G. and B.G. should be barred from obtaining relief because they contributed to the procedural errors and did not raise them until a prehearing conference in July, 1988.

■ Parents have an equitable right to reimbursement for the cost of providing an appropriate education when a school district has failed to offer a child a FAPE. *School Comm. v. Dept. of Educ.*, 471 U.S.

359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). The conduct of both parties must be reviewed to determine whether relief is appropriate. *Alamo Heights Indep. School Dist. v. State Bd. of Educ.*, 790 F.2d 1153 (5th Cir.1986).

■ Target Range contends that the procedural errors stem almost entirely from the failure of representatives of St. Joseph School to attend the IEP meeting on October 5, 1987. However, the statute places the responsibility for the IEP process in the hands of the state and local education agencies. 20 U.S.C. §§ 1401(a)(18), 1412(6), 1414(a)(5); 34 C.F.R. § 300.344. The regulations clearly provide that if the representative of the private school cannot attend the IEP meetings, the agency "shall use other methods to *insure* participation by the private school, including individual or conference telephone calls." 34 C.F.R. § 300.348(b) (emphasis added). Target Range does not claim that it attempted to comply with that requirement. No action by the parents indicated waiver of the private school's participation. Indeed, that participation is not one the parents could waive; the requirement exists for the purpose of creating an effective IEP. That the parents elected to proceed with the October 5, 1987, meeting does not relieve Target Range of its responsibilities under the Act.

■ Target Range also claims that the parents failed to respond to its correspondence, including its March 7, 1988, letter to their attorney offering to convene another IEP meeting if R.G. were to be placed at Target Range. The school enclosed with the letter a copy of the opinion of the Montana Office of Public Instruction that the school was not required to provide transportation for R.G. from the parochial school to Target Range. The school contends that the parents' insistence on transportation and failure to assert their complaints about the IEP procedure prior to the pre-hearing conference sullied the hands of the parents and should bar relief. We disagree. As W.G. and B.G. argue, their initial ten requests given to Target Range on October 5, 1987, gave notice of the importance of the participation of St. Joseph School personnel in the IEP process and of the parents' various substantive concerns.

The responsibility for preparing an IEP lies primarily with the educational agency. Although the parents, through their attorney, requested another IEP meeting in November, 1987, Target Range did not indicate that it was prepared to reconvene IEP meetings until its letter of March 7, 1988, addressed to the attorney for W.G. and B.G., five months after the initial meeting and more than half way through the school year. Target Range never replied to the specific concerns of the parents as outlined in their written requests of October 5, 1987. Its claim that the delays are the fault of the parents is without merit.

Target Range cites *Doe v. Alabama State Dep't of Educ.* to support its argument that the parents' contributions to the delays bar their recovery. *See* 915 F.2d 651, 663 (11th Cir.1990). However, in *Doe,* the child received services from the school before an IEP was in place. An appropriate IEP process was underway and a final IEP was not in effect because the child's parents and the school had not yet agreed. *Id.*

■ R.G. received no services from Target Range during the time in question. Target Range did make clear to W.G. and B.G. that services for R.G. would be provided at Target Range. However, the Act does not require parents to place their children in public schools when an IEP is merely under discussion. W.G. and B.G. are not barred as a matter of equity from recovering.

## V.

■ Target Range contends that the district court clearly erred in finding that the tutoring secured by W.G. and B.G. for R.G. was an appropriate alternative educational program for which the parents should be reimbursed. Target Range argues that the private tutoring was inappropriate and resulted in no measurable progress. The tutor used a method other

than that determined by Target Range to be appropriate and for which the tutor had not been trained to teach.

The Act requires the school district to provide the child with a FAPE. The substantive standard is simply "some educational benefit." *See Alamo Heights*, 790 F.2d at 1158. The reviewing court may order school authorities to reimburse parents for private educational expenses if the placement, "rather than a proposed IEP, is proper under the Act." *School Comm. v. Department of Educ.*, 471 U.S. at 369, 105 S.Ct. at 2002.

We have determined that an appropriate IEP was not offered. We now examine whether the private placement was appropriate. The district court based its findings on the testimony of R.G.'s teachers. The tutor, qualified by the public school district to teach learning disabled students, followed the program recommended by the St. Joseph School psychologist and special education teacher. R.G.'s teachers testified that his performance in school had improved.

Target Range argues that R.G. showed no measurable progress on standardized tests as a result of the tutoring. However, the district court found that the tutoring provided R.G. with an appropriate education. Standardized tests are not the sole indicator of a student's progress. The Act does not require as much. *See Hall*, 774 F.2d at 636. An IEP must provide "some educational benefit" to a child, but no IEP was in place for R.G. and Target Range has not shown that R.G. received no educational benefit from the tutoring. Expert witness Jan Lieber testified that remediation "takes a long time" and that she would "not necessarily expect to see significant improvement on the basis of the tutoring" in the short term.

Next, Target Range argues that the tutor did not use the program determined to be appropriate by the school district to address R.G.'s sequential processing problem. First, this alone does not bar recovery. *See Alamo Heights*, 790 F.2d at 1161. In *Alamo Heights*, the parent disagreed with the terms of a change to the IEP in

place for her child. *See* 790 F.2d at 1158–59. She unilaterally placed her child in a program that was not found to be the specific type of programming required by Act. However, the Fifth Circuit held that this did not preclude reimbursement. "[P]arents who elect to risk shouldering the costs of what they perceive to be a more appropriate placement," and whose judgment is vindicated by the district court, are entitled to reimbursement. *Id.* at 1161. The court of appeals remanded to the district court for a determination of appropriate reimbursement. Factors to be considered included the existence of other, more suitable placements, the effort expended by the parent in "securing alternative placements" and the general cooperative or uncooperative position of the school district. *Id.*

Second, Target Range's claim that R.G. should have had lessons directed at his sequential processing problem is hollow, according to W.G. and B.G. The Target Range School principal testified that Target Range would have used direct instruction materials rather than the materials specified in the proposed IEP. Also, curriculum expert Jan Lieber testified that the materials chosen by the St. Joseph School staff were appropriate and were taught appropriately.

Our review of the record supports the finding that the tutoring was appropriate, under the circumstances. Target Range failed to provide R.G. with a FAPE by failing to comply with the specified procedures for preparing the IEP. Furthermore, all of this occurred during the school year. R.G.'s parents were entitled to secure a special education placement for R.G. until an IEP was prepared properly, and they are entitled to reimbursement.

AFFIRMED.