**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

L. M., a minor by and through his
Guardian Ad Litem, SAM M. and
MARIETTE M.; SAM M., on his own
behalf; MARIETTE M., on her own
behalf,
                    *Plaintiffs-Appellees,*

            v.

CAPISTRANO UNIFIED SCHOOL
DISTRICT,
                    *Defendant-Appellant.*

No. 07-55469

D.C. No.
CV-06-03049-ABC

L. M., a minor by and through his
Guardian Ad Litem, SAM M. and
MARIETTE M.; SAM M., on his own
behalf; MARIETTE M., on her own
behalf,
                    *Plaintiffs-Appellees,*

            v.

CAPISTRANO UNIFIED SCHOOL
DISTRICT,
                    *Defendant-Appellant.*

No. 07-55585

D.C. No.
CV-06-03049-ABC

L. M., a minor by and through his Guardian Ad Litem, SAM M. and MARIETTE M.; SAM M., on his own behalf; MARIETTE M., on her own behalf,

*Plaintiffs-Appellants,*

v.

CAPISTRANO UNIFIED SCHOOL DISTRICT,

*Defendant-Appellee.*

No. 07-55758

D.C. No.
CV-06-03049-ABC

L. M., a minor by and through his Guardian Ad Litem, SAM M. and MARIETTE M.; SAM M., on his own behalf; MARIETTE M., on her own behalf,

*Plaintiffs-Appellees,*

v.

CAPISTRANO UNIFIED SCHOOL DISTRICT,

*Defendant-Appellant.*

No. 07-56373

D.C. No.
CV-06-03049-ABC

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, District Judge, Presiding

Argued and Submitted
June 3, 2008—Pasadena, California

Filed August 19, 2008
Amended February 13, 2009

Before: Diarmuid F. O'Scannlain and Richard C. Tallman,
Circuit Judges, and James K. Singleton,*
Senior District Judge.

Opinion by Judge Tallman

---

*The Honorable James K. Singleton, United States District Judge for the District of Alaska, sitting by designation.

## COUNSEL

S. Daniel Harbottle, Rutan & Tucker, LLP, Costa Mesa, California, for the defendant-appellant/appellee.

Bruce E. Bothwell, Law Office of Bruce E. Bothwell, Long Beach, California, for the plaintiff-appellee/appellant.

## ORDER

The Opinion filed on August 19, 2008, is AMENDED as follows:

The text following Section IV of the slip opinion appearing at pages 11021-11023, is DELETED and REPLACED with the following:

Parents challenge the district court's denial of a "stay put" order pursuant to 20 U.S.C. § 1415(j). The "pendent placement" or "stay put" provision requires the child to remain in his "current educational placement" during the course of administrative and judicial proceedings. *Id.*; *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 82 (3d Cir. 1996). Section 1415(j) states:

> Except as provided in subsection (k)(4) of this section, during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

The IDEA does not define the phrase "current educational placement." Courts have generally interpreted the phrase to mean the placement set forth in the child's last implemented IEP. *Johnson v. Special Educ. Hearing Office*, 287 F.3d 1176, 1180 (9th Cir. 2002) ("typically the placement described in the child's most recently implemented IEP"); *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625 (6th Cir. 1990) ("[the placement at the time of] the previously implemented IEP"); *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir. 1996) ("the dispositive factor in deciding a child's 'current educational placement' should be the [IEP] . . . actually functioning when the 'stay put' is invoked.") (internal quotation marks and citation omitted).

Alternatively, if the student has no implemented IEP because he is applying for initial admission to public school,

the parents may consent to the student being placed in public school during the pendency of administrative proceedings. In that case, even if the parents disagree with the school's initial proposed placement, the public school becomes the child's "current educational placement" for purposes of a "stay put" action. *See* 20 U.S.C. § 1415(j).

L.M. does not fit into either of these common "current educational placement" categories. First, he never had an implemented IEP. The District and Parents never agreed on a placement for L.M. Second, at the time this litigation commenced, L.M. was making his initial application for public school. But rather than consenting to L.M. being placed in a public school for the duration of the litigation as provided for in § 1415(j), Parents unilaterally placed L.M. in a very expensive private program.

Therefore, Parents' only viable argument for entitlement to "stay put" is to construe the district court's March 13, 2007, reimbursement order as creating a "current educational placement" implied by law. *Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearing,* 903 F.2d 635, 641 (9th Cir. 1990) (per curiam) (discussing *Sch. Comm. of the Town of Burlington v. Mass. Dep't of Educ.*, 471 U.S. 359 (1985), and concluding that "once the State educational agency decided that the parents' placement was the appropriate placement, it became the 'then current educational placement' within the meaning of section 1415"); *see Mackey*, 386 F.3d at 163 (" 'once the parents' challenge [to a proposed IEP] succeeds . . . , consent to the private placement is implied by law, and the requirements of § 1415(j) become the responsibility of the school district.' " (alterations in original) (quoting *Bd. of Educ. v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002)). Where the agency or the court has ruled on the appropriateness of the educational placement in the parents' favor, the school district is responsible for appropriate private education costs regardless of the outcome of an appeal. *Clovis*, 903 F.2d at 641.

Parents argue their private placement is L.M.'s "current educational placement" because they prevailed before the district court in their procedural challenge. *See Mackey*, 386 F.3d at 163. However, in each of the cases where a court implied a "current educational placement," the court or agency below had expressly deemed the private placement appropriate. In *Mackey*, a State Review Officer ("SRO") considered the two plans, found the public placement inappropriate, and concluded the student's needs were met at the private school the parents had chosen. 386 F.3d at 162. In *Clovis*, the administrative hearing officer explicitly found the private hospital placement was appropriate. 903 F.2d. at 639. In *Schutz*, the hearing officer made a "determination that the services selected by the parents were appropriate." 290 F.3d at 484-85.

On the basis of those findings on the merits, the reviewing courts could imply "current educational placements" for the purpose of § 1415(j). The *Mackey* court reasoned that "[t]he regulations provide that a child's current placement may be changed upon agreement between the parents and the state, and that an SRO decision that 'agrees with the parents that a change of placement is appropriate . . . must be treated as such an agreement.' " 386 F.3d at 163 (quoting 34 C.F.R. § 300.514(a) and (c)). The court concluded Mackey's pendency placement changed "once the SRO rendered a decision." *Id.* In *Clovis*, we concluded the school district was responsible for maintaining the student in that placement "after the administrative decision that the placement was appropriate." 903 F.2d at 641. Similarly, the Second Circuit held in *Schutz* that § 1415(j) applied because the parents had successfully challenged the proposed IEP and the services chosen by the parents were appropriate. 290 F.3d at 484-85.

That did not occur here because, in reviewing the ALJ's decision, the district court found the procedural violation to be structural and ordered the specific relief requested by Parents without ever "adjudicat[ing] the appropriateness of [L.M.'s]

private placement.'"[1] In its May 15, 2007, Order denying the stay put injunction, the district court reiterated that it had not ruled on the merits of L.M.'s placement.

Unlike in *Mackey*, *Clovis*, and *Shutz*, the district court here made no determination from which we can imply L.M.'s private program is his "current educational placement." Unless the district court or agency actually reaches the merits of the appropriate placement, we will not imply a "current educational placement" for purposes of § 1415(j).

Because L.M.'s private program, chosen by his parents alone, does not qualify as a "current education placement" under § 1415(j), the "stay-put" provision does not apply and the district court properly denied Parents' motion.

The panel has voted to deny the petitions for panel rehearing. Judges O'Scannlain and Tallman have voted to deny the petitions for rehearing en banc and Judge Singleton so recommends.

The full court has been advised of the petitions for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petitions for panel rehearing and the petitions for rehearing en banc are denied.

---

[1] L.M. points to language in the district court's opinion indicating "the private in-home services . . . were appropriate, under the circumstances" to support his argument that the court did rule on the merits of his placement. He takes this language entirely out of context. In that section of its opinion, the district court addressed the right to reimbursement under section § 1412(a)(10)(c), which permits reimbursement if the child has received "some educational benefit." The district court deemed the private placement "appropriate under the circumstances" only in the sense that L.M. had received some educational benefit entitling Parents to reimbursement for the one year for which they actually sought relief. It has no bearing on the merits of the two programs for purposes of § 1415(j).

No further petitions for rehearing en banc shall be entertained.

---

## OPINION

TALLMAN, Circuit Judge:

L.M. is the autistic child of two loving parents, Samuel and Mariette (collectively "Parents"), who have spared no expense to obtain private in-home treatment for their developmentally disabled son. The local Capistrano Unified School District ("District") balked at the idea of continuing the in-home educational plan at public expense and offered an alternative plan. The matter ended up before an administrative law judge in California who conducted a four-day evidentiary hearing to resolve the dispute, ultimately ruling in favor of the District.

We must decide whether the district court clearly erred by reversing the state administrative agency's finding that a procedural violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482, amounted to harmless error. The answer depends on whether the District significantly restricted Parents' right to participate in their disabled child's Individual Educational Program ("IEP") by limiting Parents' classroom observational opportunities to twenty minutes, when the District observed the child in his private education program for up to three hours. The district court had jurisdiction under 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3). We have appellate jurisdiction under 28 U.S.C. § 1291.

In reversing the administrative agency, the district court failed to properly consider whether Parents' right to participate was "significantly affected." In other words, the district court failed to consider whether the District's policy of limiting Parents' classroom observational opportunities to twenty

minutes was harmless because Parents nevertheless had a full opportunity to participate in the process to fashion an appropriate educational plan for L.M. with help from an informed and knowledgeable expert. There is no evidence to support a finding that Parents' right to participate was significantly affected. We therefore reverse the district court's order requiring the District to reimburse Parents for the cost of in-home services and vacate its subsequent award of attorneys' fees to Parents as the prevailing party. We also affirm the district court's denial of a "stay put" order requiring the District to reimburse Parents for continuing education expenses beyond that covered in its original order.

I

In July 2004, a pediatric neurologist diagnosed L.M., then two and one-half years old, with autism. L.M. began receiving early intervention services from the Regional Center of Orange County in late August 2004. Through the early intervention services, L.M. received speech-language therapy, occupational therapy, and started a one-to-one in-home behavioral program. Autism Comprehensive Educational Services ("ACES"), a non-public agency, administered L.M.'s private behavioral program. In December 2004, L.M.'s parents began paying ACES for a few additional hours of one-to-one services per week, eventually increasing his one-to-one services to twenty-five hours per week.

In November 2004, Parents met with the District's school psychologist Luisa Martinez to begin discussing L.M.'s transition to the District on his third birthday. In December and January, the District conducted several observations of L.M. during his in-home education services. On January 10, 2005, L.M.'s IEP team met to discuss L.M.'s assessment results and initial placement in the District.[1] The District offered to place

---

[1] An IEP is a written statement developed for each disabled child by an "IEP team" that typically consists of the parents, a special education

L.M. in the Palisades Elementary School, provide individual intensive behavior instruction for four hours per week, speech-language therapy for two thirty-minute sessions per week, occupational therapy for thirty minutes per week, and extended school year services. Parents attended the meeting, asked questions, but did not indicate whether they approved of the District's proposed program.

L.M. turned three-years-old on January 22, 2005, but did not begin attending school in the District. Parents continued to fund the one-to-one services provided from ACES. After the initial IEP meeting, Parents twice visited the proposed school, once with the principal and once with Dr. Melanie Lenington, a licensed psychologist. Dr. Lenington asked to observe the proposed program for a continuous ninety-minute period, but was limited to twenty-minute increments because of a district-wide policy.[2] Dr. Lenington never returned to conduct further observations after her initial twenty-minute visit.

In February and March 2005, District psychologist Martinez attempted to contact Parents to discuss the IEP offer. The Parents did not respond, and in March 2005, they filed a request for a due process hearing pursuant to 20 U.S.C.

---

teacher, a representative of the local education agency, an expert, and when appropriate, the child. 20 U.S.C. § 1414(d); *Christoper S. v. Stanislaus County Office of Educ.*, 384 F.3d 1205, 1208 n.1 (9th Cir. 2004). Some of the information the IEP must contain includes: (1) information regarding the child's present levels of performance; (2) a statement of annual goals and short-term instructional objectives; (3) a statement of the special educational and related services to be provided to the child; (4) an explanation of the extent to which the child will not participate with non-disabled children in the regular class; and (5) objective criteria for measuring the child's progress. 20 U.S.C. § 1414(d).

[2]To limit classroom disruption, the District did not allow classroom observations to extend beyond twenty minutes. However, Dr. Lenington could have returned anytime for another twenty-minute observation period. She chose not to do so because of the time and expense involved in commuting to and from the school.

§ 1415(f), alleging that the proposed IEP offer denied L.M. a free appropriate public education ("FAPE").[3] In response to the due process request, on April 7, 2005, the District sent a letter to Parents offering additional services including more tutoring in the home and a formal transition plan.

In June 2005, the IEP team met for a second IEP meeting. During this meeting L.M.'s father, Samuel, asked several pointed questions regarding the research supporting the District's program. After some discussion, District staff objected to Samuel's questions because they felt interrogated. When District staff attempted to change the subject to topics specific to L.M., Samuel objected, and stated that the last two minutes of the meeting should be used to talk about the District's topics. In September 2005, Parents enrolled L.M. in the Center for Autism and Related Disorders program.

The California due process hearing took place in February 2006. The hearing lasted four full days and twelve witnesses were called. During the hearing and in her subsequent Opinion, Administrative Law Judge ("ALJ") Suzanne B. Brown addressed four separate issues: (1) whether the District offered L.M. a FAPE in the least restrictive environment from

---

[3]The IDEA guarantees all disabled children a FAPE, which "emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). The IDEA defines FAPE as

> special education and related services that—
>
> > (A) have been provided at public expense, under public supervision and direction, and without charge;
> >
> > (B) meet the standards of the State educational agency;
> >
> > (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> >
> > (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9).

January 22, 2005, through April 7, 2005; (2) whether the District offered L.M. a FAPE in the least restrictive environment from April 7, 2005, through June 7, 2005; (3) whether the District offered L.M. a FAPE in the least restrictive environment from June 7, 2005, to February 2006; and (4) whether L.M. is entitled to reimbursement for privately funded services and prospective placement with his service providers.

The ALJ concluded that the District failed to offer L.M. a FAPE from January 22, 2005, to April 7, 2005, because the District had not clearly offered thirty minutes of weekly individual speech-language therapy[4] and because the District's proposed IEP lacked a transition plan that was designed to address L.M.'s unique needs.[5] Although the District offered Parents an IEP with a transition plan on April 7, 2005, the new IEP still neglected to provide L.M. with the necessary thirty minutes of weekly individual speech-language therapy. Therefore, the ALJ concluded that the District also failed to offer L.M. a FAPE in the least restrictive environment from April 7, 2005, to June 7, 2005. As a result of these procedural violations, the ALJ ordered the District to reimburse Parents for the cost of providing the in-home program from January 22, 2005, to April 7, 2005. The ALJ also ordered the District to reimburse Parents for the cost of providing one hour of speech-language therapy per week from January 22, 2005, to July 22, 2005, and from the start of the 2005-2006 school year until the date of the ALJ's decision filed March 28, 2006.

The ALJ also determined that the District violated California Education Code section 56329(c)[6] when it limited Dr.

---

[4]Although the District offered two thirty-minute sessions of speech-therapy, it did not specifically offer at least one thirty-minute session of *individual* speech-language therapy.

[5]The District did not appeal the ALJ's findings regarding these violations.

[6]California Education Code section 56329(c) provides:

Lenington's classroom observation time to twenty-minute increments, but the ALJ nevertheless concluded that the procedural flaw in the development of the IEP was harmless and did not amount to the denial of a FAPE. The ALJ determined that Parents still had the opportunity to participate in the "due process hearing with an expert witness prepared to provide a knowledgeable opinion about the proposed placement." The ALJ noted that Dr. Lenington admitted during her testimony that she "was still able to develop opinions about the [Palisade program], advise the parents regarding [Palisade], and give informed testimony at the hearing regarding the [Palisade program]." Moreover, "given Dr. Dores' [(the District's expert)] extensive knowledge about the [Palisade program], [the ALJ believed that] an additional 70 minutes of Dr. Lenington's observations likely would not have significantly affected the weight given to her testimony regarding the appropriateness of the [Palisade program]."

Ultimately, the ALJ did not find a procedural or substantive violation of the IDEA that would allow Parents to receive reimbursement of the costs of in-home care after April 7,

---

If the parent or guardian obtains an independent educational assessment at private expense, the results of the assessment shall be considered by the public education agency with respect to the provision of free appropriate public education to the child, and may be presented as evidence at a due process hearing pursuant to Chapter 5 (commencing with Section 56500) regarding the child. If a public education agency observed the pupil in conducting its assessment, or if its assessment procedures make it permissible to have in-class observation of a pupil, *an equivalent opportunity shall* apply to an independent educational assessment of the pupil in the pupil's current educational placement and setting, and observation of an educational placement and setting, if any, proposed by the public education agency, regardless of whether the independent educational assessment is initiated before or after the filing of a due process hearing proceeding.

(Emphasis added.)

2005. The ALJ also declined to find that L.M. is entitled to prospective placement with his current providers since she determined that the District's proposed IEP amounted to a substantively viable FAPE.

Parents challenged the ALJ's decision to the United States District Court for the Central District of California. Primarily at issue in this appeal is whether the district court clearly erred in reversing the ALJ's finding of harmlessness with regards to the District's technical violation of section 56329(c). The district court concluded that the limitation amounted to more than a "mere technical violation" since it "constitute[d] a procedural violation of the IDEA by depriving [Parents] of the right to meaningfully participate in the IEP process." By limiting Dr. Lenington's ability to observe the Palisades program, the District "frustrated the *purpose* of Cal. Edu. Code § 56329 by denying [Parents] the opportunity to gather evidence regarding the appropriateness [of] placing [L.M.] at Palisades." The district court ordered the District to reimburse Parents for the cost of all in-home services received between January 22, 2005, until the date the District properly prepared an IEP. The district court remanded the case to the ALJ for a determination on the reimbursement amount. The District timely appealed.[7]

II

A party aggrieved by the findings and decision of an ALJ in a due process hearing may seek review through a civil action in United States district court. 20 U.S.C. § 1415(i)(2). The IDEA provides that in reviewing a due process hearing, the district court:

> [1] shall receive the records of the administrative proceedings;

---

[7]Including attorneys' fees, the District was ultimately ordered to pay approximately $215,000 to Parents. In appeal No. 07-55585 and No. 07-56373, the District appeals the district court's award of attorneys' fees.

[2]  shall hear additional evidence at the request of a party; and

[3]  basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate.

20 U.S.C. § 1415(i)(2)(C).

In reviewing administrative decisions, the district court must give "due weight" to the state's judgments of education policy. *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982); *County of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466 (9th Cir. 1996). In recognition of the administrative agency's expertise, the court "must consider [the agency's] findings carefully and endeavor to respond to the hearing officer's resolution of each material issue." *County of San Diego*, 93 F.3d at 1466 (internal quotation marks omitted). Although the district court "is free to determine independently how much weight to give the administrative findings" the "courts are not permitted simply to ignore [them]." *Id.* (internal quotation marks omitted). A district court shall accord more deference to administrative agency findings that it considers "thorough and careful." *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995). The ALJ's twenty-page Opinion certainly meets that standard in our judgment. We review for clear error a district court's findings of fact in an IDEA case. *Id.*

## III

**[1]** The IDEA assures that all disabled children receive a FAPE through IEPs. 20 U.S.C. § 1400(d)(1)(A). As a part of their FAPE, the IDEA guarantees certain procedural safeguards for the disabled child and his or her parents. 20 U.S.C. § 1415(a); *W.G. v. Bd. of Trs. of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1483 (9th Cir. 1992) ("*Target Range*"),

*superseded by statute on other grounds by* Individuals with Disability Education Act Amendments of 1997, Pub. L. 105-17, § 614(d)(1)(B), 111 Stat. 37. "Central among the safeguards is the process of developing an [IEP] for each child." *Id.* (citing 20 U.S.C. §§ 1401(a)(18)(D), 1412(1)); *see also Rowley*, 458 U.S. at 181 (stating that in reviewing an IDEA case, a court must first determine whether "the State complied with the procedures set forth in the Act").

**[2]** Procedural flaws in the IEP process do not always amount to the denial of a FAPE. *Target Range*, 960 F.2d at 1484; *see also M.L. v. Federal Way Sch. Dist.*, 394 F.3d 634, 652 (9th Cir. 2005) (plurality) (Gould, J., concurring) (citing 28 U.S.C. § 2111). Once we find a procedural violation of the IDEA, we must determine whether that violation affected the substantive rights of the parent or child. *M.L.*, 394 F.3d at 652 (Gould, J., concurring); *Target Range*, 960 F.2d at 1484; *see also Shapiro v. Paradise Valley Unified Sch. Dist.*, 317 F.3d 1072, 1079-80 (9th Cir. 2003), *superseded on other grounds by* 20 U.S.C. § 1414(d)(1)(B) (2003); *Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877, 891-92 (9th Cir. 2001). "[P]rocedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of a FAPE." *Target Range*, 960 F.2d at 1484 (citations omitted). Here, Parents do not contend that by limiting Dr. Lenington's ability to observe, the District caused "a lost educational opportunity." Therefore, we are concerned only with whether the procedural violation "significantly restricted" Parents' participation in the IEP process. *See M.L.*, 394 F.3d at 653 (Gould, J., concurring); *Target Range*, 960 F.2d at 1484.

**[3]** California Education Code section 56329(c) provides that "[i]f a public education agency observed the pupil in conducting its assessment . . . *an equivalent opportunity* shall apply to an independent educational assessment" for the parents with regards to observation of the proposed educational

placement and setting. The purpose of section 56329(c) is to level the playing field between the parents and a more knowledgeable school district. *Benjamin G. v. Special Educ. Hearing Office*, 131 Cal. App. 4th 875, 881 (Cal. Ct. App. 2005). "IDEA acknowledges the fact that school districts have better access to information and more educational expertise than parents and thus provides for a 'due process' hearing to 'level the playing field' by permitting the parents to present all the evidence they can muster to challenge the district's decision." *Id.* "To that end, IDEA gives the child and his parents the right to be advised by experts, to have those experts testify at their due process hearing, and to have someone other than a district employee as a hearing officer." *Id.*

The ALJ concluded that the District's time limitation, while a violation of California Education Code section 56329(c), did not so undermine the statute's purpose as to deprive Parents of their right to participate in the due process hearing with an independent, knowledgeable expert. Indeed, as Dr. Lenington testified, even with the time limitation, she was still able to develop opinions, advise Parents, and give informed testimony at the hearing. Having heard all of the live testimony, and having concluded that the District's expert —who had extensive knowledge about the Palisade program —was more credible, the ALJ concluded that an additional seventy minutes of observation "likely would not have significantly affected the weight" she gave to Dr. Lenington's testimony.

Despite concluding that the ALJ's careful and thorough opinion deserved "substantial deference," the district court rejected the ALJ's assessment and held that the District's procedural violation deprived Parents of their right to "meaningfully participate in the IEP process." Relying on *Benjamin G.*, the district court held that the District "not only technically violated [section 56329]," it "also frustrated the purpose of [that section] by denying [Parents] the opportunity to gather evidence regarding the appropriateness [of] placing [L.M.] at

Palisades." According to the district court, this arose to more than a "mere technical violation" because some of the most important procedural safeguards are those that protect a parent's right to participate. The district court also noted that the ALJ concluded Dr. Lenington was " 'not particularly familiar with [Palisades] or other components of the District's program, and thus [her] testimony regarding the District's program carried less weight than that of [the District's expert,] Dr. Dores, who helped to design the program and continues to supervise it.' " Although the district court did not disagree with the ALJ's assessment of the knowledge and credibility of the witnesses, it disagreed with the ALJ's conclusion that the procedural violation did not deprive Parents of their right to "meaningfully participate in the IEP process."

[4] The district court misconstrued the ALJ's findings, and in doing so, it failed to properly apply the harmless error analysis required by our precedent. Not all procedural flaws result in the denial of a FAPE. We have never adopted as precedent the structural defect approach discussed by Judge Alarcón in *M.L. v. Federal Way School District*, 394 F.3d 634 (9th Cir. 2005) (plurality). *See id.* at 652-52 (Gould, J., concurring). Our precedent is clear: a procedural violation may be harmless, and we must consider whether the procedural error either resulted in a loss of educational opportunity or significantly restricted parental participation. *Id.*; *Shapiro*, 317 F.3d at 1079-80; *Amanda J.*, 267 F.3d at 891-92; *Target Range*, 960 F.2d at 1484.

[5] Although the district court properly recognized that Parents have a substantial right to participate in the IEP process, it neglected to consider whether Parents' right was *significantly affected* by the District's procedural violation. In an action for judicial review of an administrative decision, the burden of persuasion rests with the party challenging the ALJ's decision. *Clyde K. v. Puyallup Sch. Dist., No. 3*, 35 F.3d 1396, 1399 (9th Cir. 1994), *superseded on other grounds as recognized in M.L.*, 341 F.3d at 1063 n.7. Parents fail to

present any evidence that undermines the ALJ's credibility findings, or proffer any evidence that they could have found had they received more classroom observation time. Dr. Lenington could have gone back on other occasions for more twenty-minute visits. Dr. Lenington also conceded that she was able to provide Parents with an informed and independent opinion, and Parents presented the opinion of Dr. Lenington during the due process hearing. Having heard all of the testimony, the ALJ determined that there was likely nothing Dr. Lenington could have discovered during an additional seventy minutes of observation time that would have changed the ALJ's ultimate opinion that placement in Palisade was appropriate for L.M. Because we conclude that there is nothing in the record to support a finding that the procedural flaw during the development of L.M.'s IEP deprived Parents of their right to meaningfully participate in the due process hearing, we conclude that the district court's finding to the contrary was clearly erroneous.[8]

IV

**[6]** Parents challenge the district court's denial of a "stay put" order pursuant to 20 U.S.C. § 1415(j). The "pendent placement" or "stay put" provision requires the child to remain in his "current educational placement" during the course of administrative and judicial proceedings. *Id.*; *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 82 (3d Cir. 1996). Section 1415(j) states:

> Except as provided in subsection (k)(4) of this section, during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise

---

[8]Because we reverse the district court's underlying order granting Parents reimbursement for a procedural violation, we vacate the order granting Parents attorneys' fees as the prevailing party (Nos. 07-55585/07-56373).

agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

**[7]** The IDEA does not define the phrase "current educational placement." Courts have generally interpreted the phrase to mean the placement set forth in the child's last implemented IEP. *Johnson v. Special Educ. Hearing Office*, 287 F.3d 1176, 1180 (9th Cir. 2002) ("typically the placement described in the child's most recently implemented IEP"); *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625 (6th Cir. 1990) ("[the placement at the time of] the previously implemented IEP"); *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir. 1996) ("the dispositive factor in deciding a child's 'current educational placement' should be the [IEP] . . . actually functioning when the 'stay put' is invoked.") (internal quotation marks and citation omitted).

**[8]** Alternatively, if the student has no implemented IEP because he is applying for initial admission to public school, the parents may consent to the student being placed in public school during the pendency of administrative proceedings. In that case, even if the parents disagree with the school's initial proposed placement, the public school becomes the child's "current educational placement" for purposes of a "stay put" action. *See* 20 U.S.C. § 1415(j).

**[9]** L.M. does not fit into either of these common "current educational placement" categories. First, he never had an implemented IEP. The District and Parents never agreed on a placement for L.M. Second, at the time this litigation commenced, L.M. was making his initial application for public school. But rather than consenting to L.M. being placed in a public school for the duration of the litigation as provided for

in § 1415(j), Parents unilaterally placed L.M. in a very expensive private program.

Therefore, Parents' only viable argument for entitlement to "stay put" is to construe the district court's March 13, 2007, reimbursement order as creating a "current educational placement" implied by law. *Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearing,* 903 F.2d 635, 641 (9th Cir. 1990) (per curiam) (discussing *Sch. Comm. of the Town of Burlington v. Mass. Dep't of Educ.*, 471 U.S. 359 (1985), and concluding that "once the State educational agency decided that the parents' placement was the appropriate placement, it became the 'then current educational placement' within the meaning of section 1415"); *see Mackey*, 386 F.3d at 163 (" 'once the parents' challenge [to a proposed IEP] succeeds . . . , consent to the private placement is implied by law, and the requirements of § 1415(j) become the responsibility of the school district.' " (alterations in original) (quoting *Bd. of Educ. v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002)). Where the agency or the court has ruled on the appropriateness of the educational placement in the parents' favor, the school district is responsible for appropriate private education costs regardless of the outcome of an appeal. *Clovis*, 903 F.2d at 641.

**[10]** Parents argue their private placement is L.M.'s "current educational placement" because they prevailed before the district court in their procedural challenge. *See Mackey*, 386 F.3d at 163. However, in each of the cases where a court implied a "current educational placement," the court or agency below had expressly deemed the private placement appropriate. In *Mackey*, a State Review Officer ("SRO") considered the two plans, found the public placement inappropriate, and concluded the student's needs were met at the private school the parents had chosen. 386 F.3d at 162. In *Clovis*, the administrative hearing officer explicitly found the private hospital placement was appropriate. 903 F.2d. at 639. In *Schutz*, the hearing officer made a "determination that the services selected by the parents were appropriate." 290 F.3d at 484-85.

On the basis of those findings on the merits, the reviewing courts could imply "current educational placements" for the purpose of § 1415(j). The *Mackey* court reasoned that "[t]he regulations provide that a child's current placement may be changed upon agreement between the parents and the state, and that an SRO decision that 'agrees with the parents that a change of placement is appropriate . . . must be treated as such an agreement.' " 386 F.3d at 163 (quoting 34 C.F.R. § 300.514(a) and (c)). The court concluded Mackey's pendency placement changed "once the SRO rendered a decision." *Id.* In *Clovis*, we concluded the school district was responsible for maintaining the student in that placement "after the administrative decision that the placement was appropriate." 903 F.2d at 641. Similarly, the Second Circuit held in *Schutz* that § 1415(j) applied because the parents had successfully challenged the proposed IEP and the services chosen by the parents were appropriate. 290 F.3d at 484-85.

**[11]** That did not occur here because, in reviewing the ALJ's decision, the district court found the procedural violation to be structural and ordered the specific relief requested by Parents without ever "adjudicat[ing] the appropriateness of [L.M.'s] private placement."[9] In its May 15, 2007, Order denying the stay put injunction, the district court reiterated that it had not ruled on the merits of L.M.'s placement.

**[12]** Unlike in *Mackey*, *Clovis*, and *Schutz*, the district court

---

[9]L.M. points to language in the district court's opinion indicating "the private in-home services . . . were appropriate, under the circumstances" to support his argument that the court did rule on the merits of his placement. He takes this language entirely out of context. In that section of its opinion, the district court addressed the right to reimbursement under section § 1412(a)(10)(c), which permits reimbursement if the child has received "some educational benefit." The district court deemed the private placement "appropriate under the circumstances" only in the sense that L.M. had received some educational benefit entitling Parents to reimbursement for the one year for which they actually sought relief. It has no bearing on the merits of the two programs for purposes of § 1415(j).

here made no determination from which we can imply L.M.'s private program is his "current educational placement." Unless the district court or agency actually reaches the merits of the appropriate placement, we will not imply a "current educational placement" for purposes of § 1415(j).

**[13]** Because L.M.'s private program, chosen by his parents alone, does not qualify as a "current education placement" under § 1415(j), the "stay-put" provision does not apply and the district court properly denied Parents' motion.

V

The district court neglected to give the ALJ's careful and thorough assessment of the harmlessness of the District's procedural violation the substantial deference it deserved. Parents participated in the due process hearing with an informed, knowledgeable, independent expert. There is nothing in the record to suggest that an additional seventy minutes of continuous observation time would have provided any information that would have undermined the ALJ's credibility findings. Because the district court failed to consider whether Parents' substantial rights were significantly affected, and because there is nothing in the record to support a conclusion that they were, we conclude that the district court's factual findings were clearly erroneous. We reverse the district court's reimbursement order (No. 07-55469) and vacate its award of attorneys' fees (Nos. 07-55585/07-56373). We affirm the district court's denial of a "stay put" order (No. 07-55758). Each party shall bear its own costs on appeal.

**REVERSED (No. 07-55469); VACATED (Nos. 07-55585/07-56373); AFFIRMED (No. 07-55758)**.