**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| J.B., a student, by and through parent, L.B.; L.B., individually, | No. 22-16816 |
| *Plaintiffs-Appellants*, | D.C. No. 2:17-cv-03316-SMB |
| v. | |
| KYRENE ELEMENTARY SCHOOL DISTRICT NO. 28, | OPINION |
| *Defendant-Appellee*. | |

Appeal from the United States District Court
for the District of Arizona
Susan M. Brnovich, District Judge, Presiding

Argued and Submission Deferred November 8, 2023
Submitted August 14, 2024
Phoenix, Arizona

Filed August 20, 2024

Before: Michael Daly Hawkins and Daniel P. Collins,
Circuit Judges, and Stephen Joseph Murphy III,[*] District
Judge.

---

[*] The Honorable Stephen Joseph Murphy III, United States District Judge for the Eastern District of Michigan, sitting by designation.

Opinion by Judge Murphy;
Dissent by Judge Collins

## SUMMARY[**]

### Individuals with Disabilities Education Act

The panel affirmed the district court's judgment upholding a decision of an administrative law judge (ALJ), who concluded that the Kyrene Elementary School District No. 28 (the District) did not violate the Individuals with Disabilities Education Act (IDEA) in a case in which J.B., a student, by and through her parent, L.B., alleged that the District failed to provide a free appropriate public education (FAPE) to J.B.

The panel held that the district court did not clearly err in finding that (1) L.B. refused to consent to the District's attempted evaluations of J.B., and (2) L.B. made her intent clear she would not re-enroll J.B. in the District.

The panel held that the District did not deny a FAPE by refusing to prepare a new individualized education program (IEP) for J.B. L.B.'s refusal to consent to evaluations while J.B. was enrolled at Brightmont Academy, L.B.'s chosen private school, relieved the District of further IDEA obligations. Further, under the IDEA, a student's district of residence is not obligated to continue offering FAPE if the parent of a privately placed student makes it clear that he or

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

she does not intend to enroll the student in the district, and L.B. made it clear that she did not intend to re-enroll J.B. in the District.

The panel held that the District procedurally erred by stating in Prior Written Notices (PWNs) that it would have no further IEP meetings because J.B. was not enrolled in the District. However, the error was harmless because the record indicates that it is unlikely that L.B. would have considered another FAPE offer as an alternative to Brightmont absent the District's procedural error.

Dissenting, Judge Collins disagreed with the majority's holding that the District's procedural error was harmless. By failing to include in the PWNs the justifications it belatedly relied on during the administrative process, and instead shutting down the entire process on an invalid ground, the District significantly impeded L.B.'s opportunity to participate in the decisionmaking process regarding the provision of a FAPE to her child. He would reverse the district court's judgment and remand with instructions to remand to the administrative agency with instructions to fashion an appropriate remedy for the District's prejudicial IDEA violation.

## COUNSEL

Richard J. Murphy (argued), The Law Office of Richard J. Murphy PLC, Phoenix, Arizona; for Plaintiffs-Appellants.

David R. Schwartz (argued) and Heather R. Pierson, Udall Shumway PLC, Mesa, Arizona; for Defendant-Appellee.

**OPINION**

S. MURPHY, III, District Judge:

Appellants J.B., the student, and L.B., J.B.'s parent, appeal the district court's judgment for Appellee Kyrene Elementary School District No. 28 (the District). The district court affirmed the findings of the Administrative Law Judge (ALJ), who concluded that the District did not violate the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* For the following reasons, we affirm the district court's decision.

## STATUTORY BACKGROUND AND LEGAL FRAMEWORK

Under the IDEA, states that receive federal funding for public education must establish policies and procedures to ensure that a "free appropriate public education [(FAPE)] is available to all children with disabilities." 20 U.S.C. § 1412(a)(1)(A). The hallmark of a FAPE for students with disabilities is the individualized education program (IEP), which is "a written statement for each child with a disability that is developed, reviewed, and revised" at least annually. *Id.* § 1401(9)(D); § 1414(d). The IDEA requires that an IEP team composed of the child's parents and teachers, a district representative, and "other individuals who have knowledge or special expertise regarding the child" meet at least annually to review and revise the IEP. *Id.* After a student's initial evaluation and the formation of an IEP, the school or the parent may request to reevaluate the student. *Id.* § 1414(a)(2). Parental consent is necessary for any evaluation or reevaluation. 34 C.F.R. § 300.300(a), (c).

"In determining whether a student has received a FAPE in compliance with the IDEA, the court conducts both a

procedural and substantive inquiry." *L.J. v. Pittsburg Unified Sch. Dist.*, 850 F.3d 996, 1003 (9th Cir. 2017). Importantly, not all procedural violations amount to a denial of FAPE. *Id.*

## FACTUAL BACKGROUND

During the 2013–14 school year, J.B. was enrolled in the District and faced behavioral and learning challenges because of complex disabilities including reactive attachment disorder, fetal alcohol syndrome, intellectual disability, Klinefelter's syndrome, attention deficit hyperactivity disorder, dyslexia, and dysgraphia. The District, L.B., and other members of the IEP team last updated J.B.'s IEP, including a new Behavior Support Plan (BSP), on January 31, 2013.

In August 2013, the first month of the school year, District staff physically restrained J.B. many times in accordance with the BSP. L.B. stopped sending J.B. to school in early September 2013 based on concerns about how District staff physically restrained J.B. On September 19, 2013, the District held an IEP meeting to address L.B.'s concerns. That same day, L.B. notified the District of her intent to place J.B. in a private school.

Members of the IEP team met on October 2, 2013 to discuss J.B.'s therapy assessments and options for future placement. At the meeting, the District offered to pay for J.B.'s education at Brightmont Academy, L.B.'s chosen private school, and transportation to Brightmont for the rest of the academic quarter (totaling nine weeks). Between October and December, L.B. and the District continued discussions to transition J.B. back to a District school beginning in January 2014.

On December 18, 2013, the District offered to pay for an extra month at Brightmont, including transportation, followed by a February 3, 2024 start date at an in-district school. The proposed agreement required L.B. to consent to additional testing and observations and provided that an IEP meeting would take place no later than January 29, 2014. The District attached the written proposal to an email to L.B. that stated, "If you agree, please let me know and we will sign and move forward."

On December 19, 2013, L.B. and District representatives met to discuss J.B.'s re-evaluation process. At the meeting, the District advised that it needed to observe J.B. in his education setting, conduct a language sample, conduct a Comprehensive Assessment of Spoken Language (CASL), and complete other assessments to develop a new IEP and transition plan for J.B. L.B. suggested that the District instead review video and audio recordings of J.B. at Brightmont in lieu of conducting in-person observations or assessments. The District voiced reservations about relying on recordings to evaluate J.B. but agreed to try.

At the end of the meeting, L.B. presented a signed "written agreement" that differed from the written offer emailed by the District on December 18, 2023. L.B.'s proposal stated, in part, that L.B. could not agree to allow testing at this time because no testing had been proposed. But, the agreement explained, L.B. would consider any evaluations proposed by the IEP team and notify the District if she would offer permission and consent for testing within [five] business days. L.B. drafted the agreement on December 18, 2013 but did not give it to the District until the conclusion of the meeting—where evaluations were proposed, negotiated, and even agreed upon—on December 19, 2013.

Early the next day, L.B. emailed the District and requested an Independent Educational Evaluation (IEE) for J.B.  The District initially responded later that morning, stating, "I will provide you a copy of the IEE procedures . . . and contact Dr. Gentry" to move forward with the evaluation.  Later that day, however, the District issued a Prior Written Notice (PWN) which stated, "The District refuses to complete an IEE for an FBA for [J.B.] since [J.B.] is not currently attending a school in the District."

On December 21, 2013, L.B. received via mail the December 20, 2013 PWN and a PWN from December 19, 2013 that summarized the RED meeting.  The District's PWN dated December 19 stated, "As [J.B.] is not currently a student enrolled in Kyrene School District, no further MET/IEP meetings will take place."  Indeed, no further meetings occurred.

Six months later, L.B. filed a due process complaint with the Office of Administrative Hearings (OAH) and alleged that the District violated the IDEA by failing to provide a FAPE to J.B.  The Administrative Law Judge (ALJ) held a nine-day evidentiary hearing, heard the testimony of seventeen witnesses, and reviewed 180 exhibits.  The ALJ then issued a 130-page decision finding for the District on all issues.  L.B. appealed the decision to the U.S. District Court for the District of Arizona, which affirmed in part and reversed in part the ALJ's decision and remanded four issues to the OAH.  The ALJ held another evidentiary hearing on the remanded issues and again decided in favor of the District.  L.B. appealed to the district court, which affirmed the ALJ's decision.  *L.B. v. Kyrene Elementary Sch. Dist.*,

No. cv-17-03316, 2022 WL 14389900 (D. Ariz. Oct. 25, 2022). This appeal followed.

## STANDARD OF REVIEW

The Court will give "due weight" to the ALJ's decision if it is based on "thorough and careful" findings. *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995). This standard for IDEA cases is less deferential to the State administrative proceedings than in other cases reviewing administrative decisions. *Id.* The reviewing court "shall receive the record of the [State] administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on a preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2). Appellants bear the burden of proving that the ALJ's decision was incorrect. *Crofts v. Issaquah Sch. Dist. No. 411*, 22 F.4th 1048, 1053 (9th Cir. 2022).

The Court will review the district court's findings of fact for clear error—even when they are based on the administrative record—and legal conclusions *de novo*. *L.J.*, 850 F.3d at 1002; *Crofts*, 22 F.4th at 1053. "A finding is clearly erroneous if it is illogical, implausible, or without support in the record." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). "The clear error standard is significantly deferential and is not met unless the reviewing court is left with a definite and firm conviction that a mistake has been committed." *Fisher v. Tucson Unified Sch. Dist.*, 652 F.3d 1131, 1136 (9th Cir. 2011).

## DISCUSSION

### I. Whether the district court clearly erred when it held L.B. refused consent to evaluate J.B.

We evaluate the district court's factual conclusion that L.B. refused consent to evaluate J.B. for clear error. *See L.J.*, 850 F.3d at 1002. When reviewing this issue and issue II, which are factual questions, we must not "change the character of [our analysis] from one of review to a trial *de novo*." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1473 (9th Cir. 1993). In other words, our job is to give "due weight" to the ALJ's findings of fact, on which the district court based its decision. *See Capistrano*, 59 F.3d at 891. We agree with the district court that "the ALJ was thorough and careful in articulating detailed findings of fact," and therefore we also agree that "those findings are entitled to significant weight." *L.B.*, 2022 WL 14389900 *1. The district court affirmed the ALJ's finding that L.B. "refused to give consent, or set one-sided conditions, for testing, evaluations, or observations." *L.B.*, 2022 WL 14389900 *2 (citing the ALJ's opinion and concluding that "the ALJ's findings are supported by the record"). We evaluate de novo the effects of L.B.'s refusal to consent in sections III and IV below.

Here, the record supports the district court's finding that L.B. demanded a new IEP but refused consent for necessary reevaluations. Appellants argue that the IDEA puts the burden on the District to seek and obtain informed consent from parents. *See* 20 U.S.C. § 1414(a)(1)(D)(i) ("shall obtain informed consent from the parent"). But the District cannot force consent. It need only make "reasonable efforts" to obtain consent. 34 C.F.R. § 300.300(d)(5). The District met that burden by making numerous proposals for

evaluations and offering to make multiple concessions to appease L.B.'s demands. During the December 19, 2013 meeting, the IEP team determined that it needed several assessments to develop an updated program for J.B. to reenter the District: additional academic testing, curriculum-based assessments to determine academic performance, speech-language evaluations including a standardized assessment, a language sample, and observations in an educational environment. The record supports that L.B. did not agree to any of these assessments during the meeting.

For example, when the District's psychologist stated that she needed to observe J.B. in the learning environment to observe J.B.'s progress at Brightmont, L.B.'s advocate responded that L.B. would only allow video recordings for the psychologist to watch. Despite reservations, the District agreed to attempt to observe J.B. through video recordings.

Also during the meeting, the District's speech pathologist stated that she needed to collect a language sample from J.B. with a spoken language assessment. This type of assessment required an in-person evaluation, and the pathologist explained that audio and visual recordings would not suffice. Still, L.B. insisted that only audio and visual recordings would be provided.

At the end of the meeting, L.B. presented the District with a proposed written agreement that stated that she would not allow testing "at this time" but that she "will consider any proposed evaluations and notify the District if she will offer permission and consent for testing within [five] business days." But L.B. never consented to any of the District's proposed evaluations. The proposed agreement also provided that L.B. agreed only to allow the District to "observe" J.B. via a two-hour video recording of J.B. at

Brightmont, subject to Brightmont's consent. The two-hour recording limit was never proposed or negotiated during the December 19 meeting. L.B.'s proposed agreement also limited in-person observations of J.B. by requiring advance approval from J.B.'s private, licensed therapist who would determine "when and how direct observations" would proceed. Considering the above, the record supports a finding that L.B. refused to consent to the testing proposed at the December 19, 2023 meeting.

Similarly, although L.B. testified at a hearing in front of the ALJ that "most of [the evaluation assessments] had been done [and] . . . if there was something they had more questions on, then they could certainly ask the person that did it," L.B. limited the District's ability to exchange outside records with J.B.'s outside evaluators, who conducted those assessments by editing the release of information consent forms at the December 19, 2013 meeting.

Taken together, the record evidence supports the district court's summary that L.B., through J.B.'s private therapist, was "to determine when and how in-person observations occurred." *L.B.*, 2022 WL 14389900 *2. Because the record supports the district court's conclusion that L.B. did not "consent to the District's attempted evaluations," there is no clear error. *Id.*

## II. Whether the district court clearly erred when it held L.B. made her intent clear she would not re-enroll J.B.

As with the prior issue, the Court will review the district court's determination that L.B. did not intend to re-enroll J.B. in the District for clear error. *See L.J.*, 850 F.3d at 1002.

The ALJ's decision was based, in part, on its assessment that L.B. was not credible. For example, the ALJ stated that Appellant's "characterization of L.B.'s action of taking with her the enrollment forms as being indicative of her intent to enroll J.B. was not credible." In other words, the ALJ found that although L.B. retained the District's enrollment forms from December 2013, she intended to keep J.B. in private school and litigate.

Both the ALJ's credibility determination and its determination that L.B. did not intend to enroll J.B. are supported by the record. After L.B. unilaterally withdrew J.B. from the District and enrolled him at Brightmont, L.B. rejected the District's plan to transition J.B. back to the District. During the December 19, 2013 meeting, L.B. indicated she would not enroll J.B. unless her reevaluation and IEP demands were met. Two District representatives who spoke to L.B. after the meeting testified that L.B. stated that she did not plan to re-enroll J.B.

In sum, L.B. refused to allow the District to conduct the very observations she demanded, which ensured that her demands could not be met and thus that she could keep J.B. at Brightmont. Indeed, L.B. never re-enrolled J.B. in the District. The record supports the ALJ's findings that L.B.'s testimony was not credible and that she did not intend to enroll J.B. in the District. The district court thus did not err in determining that the ALJ's findings were supported by the record.

## III.  Whether the District denied a FAPE by refusing to prepare a new IEP for J.B.

We review the issue of whether the District violated the IDEA by refusing to prepare a new IEP or make a new offer of FAPE after December 19, 2013 *de novo*. *Crofts*, 22 F.4th

at 1053.          Under the IDEA, the District must conduct evaluations to formulate J.B.'s IEP.          34 C.F.R. § 300.304(b)(1); § 300.305(a).  As part of the evaluation or reevaluation process, the District must observe and evaluate J.B. in the classroom.          *Id.* § 300.305(a)(1)(ii–iii); § 300.310(a).    The IDEA requires "parental consent for reevaluations."    *Id.* § 300.300(c).    If the parent of a child "placed in a private school by the parents at their own expense does not provide consent for the initial evaluation or reevaluation . . . the [District] is not required to consider the child as eligible for services." § 300.300(d)(4).  Notably, the District "does not violate its obligation [to evaluate the student and offer FAPE] if it declines to pursue the evaluation or reevaluation" after the parent refuses to consent. *Id.* § 300.300(c)(1)(iii).  If a student has an IEP, the school district is required to review the IEP at least annually. 20 U.S.C. § 1414(d)(4)(A)(i).

J.B.'s most recent IEP was created in January 2013 and therefore needed to be reviewed, at the latest, before January 30, 2014.  The IEP team met multiple times in the fall of 2013 to discuss J.B.'s IEP and review J.B.'s evaluations. But L.B. continuously rejected the District's proposals for new evaluations necessary for a new IEP.  L.B. also rejected the District's transition plans and FAPE offers, the last of which was offered on December 19, 2013.  As explained above, the record supports the ALJ and district court's conclusion that L.B. refused consent for the District to re-evaluate J.B. in the classroom at Brightmont.  And L.B.'s refusal to consent to evaluations while J.B. was enrolled in Brightmont relieved the District of further IDEA obligations.  *See* 34 C.F.R. § 300.300(c)(1)(iii).

Further, under the IDEA, a student's district of residence is not obligated to continue offering FAPE if the parent of a privately placed student "makes clear his or her intent" to keep the child enrolled in an out-of-district private school. 71 Fed. Reg. 46,540, 46,593 (2006). The U.S. Department of Education Office of Special Education and Rehabilitative Services clarified that when a parent places a student in private school and then makes it clear that he or she does not intend to re-enroll the student in the district, the district does not have to continue to offer FAPE. *Letter to Wayne*, 73 IDELR 261 (OSEP 2019). And as the district court and ALJ permissibly found, L.B. made it clear throughout the fall semester 2013—and particularly on December 19, 2013—that she did not intend to re-enroll J.B. in the District.

In sum, the district court properly found that L.B.'s "rejection of [the final] FAPE offer, along with her non-consent to the District's attempts to reevaluate J.B., relieved the District of any IDEA obligations." *L.B.*, 2022 WL 14389900 *3. The District was not obligated to prepare a new IEP or make a new offer of FAPE after December 19, 2013 because (1) L.B. refused consent to evaluations, (2) L.B. made her intent clear that she would not re-enroll J.B. in the District, (3) L.B. rejected the District's final FAPE offer, and (4) L.B. did not request a new offer of FAPE. The District did not violate the IDEA. *See* 34 C.F.R. § 300.300(c)(1)(iii).

**IV.   Whether the District denied J.B. a FAPE when it did not re-evaluate J.B. or make a new offer FAPE after December 19, 2013 due to J.B.'s enrollment status.**

We review the question of whether the District denied a FAPE when it issued its December 19 and December 20, 2013 PWNs *de novo*. *See L.J.,* 850 F.3d at 1002.

Congress built procedural safeguards into the IDEA to enforce a child's guarantee of FAPE and to ensure that parents have an opportunity to participate in its formulation and administration. *Id.* at 1007. The record reflects a procedural error that the District committed in its December PWN. The district court did not address this procedural error, and we write to clarify this Court's position.

The District's written reason for discontinuing IEP meetings—because J.B. was not enrolled in the District—was not a valid reason under the IDEA. But, as the district court and ALJ found, the District had other lawful reasons for ending negotiations with L.B., namely L.B.'s refusal to consent to evaluations and L.B.'s clear intent to keep J.B. enrolled outside the District. It is true that the District's failure to explain these reasons in its PWN was a procedural error under the IDEA. 20 U.S.C. § 1415(b)(3). The error, however, was harmless because it did not result in a deprivation of an educational opportunity to J.B.

*A.  Procedural Error*

The District procedurally erred by stating in the December PWN that it would have no further IEP meetings because J.B. was not enrolled in the District. Under the "procedural safeguards" section of IDEA, the District must provide "[w]ritten prior notice to the parents of the child"

whenever the District "(A) proposes to initiate or change; or (B) refuses to initiate or change the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child." 20 U.S.C. § 1415(b)(3). The notice must include "a description of the action proposed or refused by the agency" and "an explanation of why the agency proposes or refuses to take the action." § 1415(c)(1)(B). Thus, to discontinue IEP meetings, the District needed to issue a written notice to L.B. explaining the reasons for its decision.

The District did so by issuing two PWNs to L.B. in December. In its December 19, 2013 PWN, the District explained that it would not schedule any further IEP meetings because J.B. was not enrolled in the District. Similarly, in the December 20, 2013 PWN the District declared that it refused to complete an IEE for J.B. because he was not, at that time, attending a school in the District. During the remand hearing, the District's representative confirmed that it was her understanding that the District did not have responsibility to offer FAPE to J.B. because he was not enrolled in the District.

J.B.'s enrollment status was the only reason the District listed in its PWNs for halting IEP meetings. But that reason is not legitimate under IDEA. A district must "have in effect, for each child with a disability in the agency's jurisdiction, an individualized education program." 34 C.F.R. § 300.131. If a student enrolled in a private school "needs special education and related services, the LEA [district] where the child resides is responsible for making FAPE available to the child." 71 Fed. Reg. 46540, 46593 (Aug. 14, 2006) (explaining 34 C.F.R. § 300.131); *see Bellflower Unified Sch. Dist. v. Lua*, 832 Fed. Appx. 493, 495–96 (9th Cir. 2020) (finding that school district denied FAPE when it

refused to hold IEP meeting unless the student was enrolled in the district); *Hack v. Deer Valley Unified Sch. Dist.*, CV-15-02255-PHX-JJT, 2017 WL 2991970 *5–6 (D. Ariz. July 14, 2017) (same). As explained, the District had lawful reasons for refusing evaluations and IEP meetings. But the District failed to rely on those reasons in the PWNs, which was a procedural error under IDEA. 20 U.S.C. § 1415(b)(3).

### B. Harmless Error

The District's procedural error did not amount to a denial of FAPE because it was a harmless error. "Not every procedural violation . . . is sufficient to support a finding that the child in question was denied a FAPE." *N.B. v. Hellgate Elem. Sch. Dist.*, 541 F.3d 1202, 1208 (9th Cir. 2008) (citation omitted). A procedural violation constitutes a denial of FAPE if the procedural inadequacy:

> (I) impeded the child's right to a free appropriate public education;
> (II) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a free appropriate public education to the parents' child; or

> (III) caused a deprivation of educational benefits.

20 U.S.C. § 1415(f)(3)(E)(ii).

The dissent posits that if the District provided L.B. valid justifications for terminating the IEP and evaluation process, L.B. would have had the opportunity to question whether the District changed its position after the December 19 meeting or whether the parties could still reach an agreement

regarding evaluations.     Although this hypothetical alternative is possible, the record does not support that it is likely.  Instead, the record shows that there was not a strong likelihood here that L.B. would have considered another FAPE offer as an alternative to Brightmont.  As explained above, L.B. continuously refused the District's offers of FAPE and requests to re-evaluate J.B. at Brightmont. During the December 19 meeting, L.B. stated several conditions that must be met before she would agree to such evaluations.     Although the District indicated it would attempt to meet her conditions, the District also stated reservations about being able to adequately evaluate J.B. through audio and video recordings.     Contrary to the dissent's characterization, the December 19 meeting did not result in progress toward developing a new IEP for J.B. Indeed, at the end of the meeting, when L.B. presented a signed "written agreement" that stated she did not agree to allow testing because no testing had been proposed, the District reasonably understood this to mean that the parties did *not* reach an agreement or make significant progress during the meeting.  And after receiving the PWNs, L.B. did not request another IEP.

Even if the District's PWN listed valid reasons for denying FAPE—like L.B.'s refusal to consent to evaluations and rejection of the District's final FAPE offer without an affirmative request for a new offer—the record indicates that L.B. would have continued to insist on evaluations only under her conditions.  Because it is unlikely that L.B. would have considered another FAPE offer as an alternative to Brightmont absent the District's procedural error, the error did not create "a deprivation of educational opportunity." *L.J.*, 850 F.3d at 1003.   Thus, the District's procedural

violation was not an improper denial of FAPE—it was harmless error.

### V.      Whether L.B. is entitled to any of her requested remedies.

L.B. requested reimbursement for tuition and related expenses that she paid.   But L.B. is only entitled to reimbursement "for the cost of providing an appropriate education when a school district has failed to offer child a FAPE." *W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1485 (9th Cir. 1992).  Because the District did not substantively violate the IDEA by denying FAPE to J.B., L.B. is not entitled to reimbursement for private school education. "[P]arents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local officials, do so at their own financial risk." *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S.  359, 373–74 (1985). When L.B. unilaterally removed J.B. from public school, refused consent for evaluations by the District, rejected the District's offer of FAPE, and never requested a new offer of FAPE, L.B. became responsible for financing J.B.'s education.

Although the District procedurally erred, it did not amount to a denial of FAPE under the IDEA.  The ALJ and district court were thus correct in concluding that "the District did not violate the IDEA." *L.B.*, 2022 WL 14389900 *3.  L.B. is not entitled to reimbursement for tuition and related educational expenses.

### CONCLUSION

We therefore **AFFIRM** the district court's decision to uphold the ALJ's findings in favor of the District.

COLLINS, Circuit Judge, dissenting:

I agree with the majority that Defendant Kyrene Elementary School District No. 28 ("District") committed a procedural violation of the Individuals with Disabilities Education Act ("IDEA"). *See* Opin. § IV(A). The District issued two "prior written notices" ("PWNs") informing Plaintiff L.B. ("Parent") that, solely because her son, Plaintiff J.B. ("Student"), was not then "enrolled" as a student in a District school, the District would not conduct any further meetings with her to develop an Individualized Education Program ("IEP") and would not agree to complete an "Independent Educational Evaluation" ("IEE") for him. As the majority explains, the fact that Student was not then actually enrolled in a District school is not a "legitimate" reason for terminating the IEP process or declining to conduct an IEE. Indeed, in its answering brief in this court, the District concedes that, "as the district of residence it had a general obligation to make an offer of FAPE ['Free Appropriate Public Education'] to Student."

The majority nonetheless upholds the judgment in the District's favor on the basis that, during the subsequent administrative proceedings, the District came up with substitute reasons that, even though they were not contemporaneously provided to Parent, assertedly justify its actions. Specifically, the majority concludes that the District's actions were justified by Parent's asserted refusal to "consent to evaluations" or to "re-enroll J.B. in the District" and by Parent's asserted rejection of the District's "final FAPE offer" and failure to "request a new offer of FAPE." *See* Opin. at 14. According to the majority, any procedural error was therefore harmless. I disagree with the majority's harmless error holding.

Under the IDEA, procedural violations—such as the failure to provide a valid explanation for proposed agency action in a PWN, *see* 20 U.S.C. § 1415(c)(1)(B)— "constitute a denial of a [FAPE]," and therefore warrant a remedy, only if they (1) "seriously impair the parents' opportunity to participate in the IEP formulation process"; (2) "result in the loss of educational opportunity for the child"; or (3) "cause a deprivation of the child's educational benefits." *Timothy O. v. Paso Robles Unified Sch. Dist.* 822 F.3d 1105, 1124 (9th Cir. 2016); *see* 20 U.S.C. § 1415(f)(3)(E)(ii). In my view, the District's procedural error was plainly harmful under the first of these three alternatives.

The District's first PWN (issued on December 19, 2013, after the parties' meeting earlier that day) itself makes clear that the parties had made significant progress in attempting to come to agreement over a plan to ensure that any necessary additional evaluations of Student could be conducted. The PWN also noted that the parties had rejected each other's respective FAPE offers. The PWN then unilaterally declared that no further IEP meetings would take place unless and until Parent enrolled Student in a District school. *If* Parent chose to do so, *then* the District was willing to implement its "IEP as written" while the parties "proceeded with the evaluation process." In its second PWN, issued the next day, the District refused to conduct an IEE for the same invalid reason that Student was not then "enrolled" in a District school. If the District had *not* violated the IDEA by terminating the IEP and evaluation process for an invalid reason, and had the District *instead* provided Parent the current justifications that it belatedly hauled out during the administrative process, matters would surely have played out very differently.

Thus, if the PWN had told Parent on December 19, 2013 that it viewed her conditions as, constructively, a complete *refusal* to consent to evaluations, Parent would then have had the *opportunity* to follow up to ascertain (1) whether— despite all the progress that had been made at the meeting earlier that day in trying to work out mutually acceptable evaluation conditions—the District had subsequently decided to harden its position on evaluations; or (2) whether she and the District might still be able to come to agreement on evaluations.  Likewise, had the PWN not invoked an invalid reason for completely terminating the IEP process, and had the PWN instead stated that the District thought *Parent's* position amounted to an effective termination of the IEP process that required her to restart it with a new request, she would then have had the *opportunity* to immediately make that request.  The District's reliance on these belated substitute justifications thus unambiguously confirms the harmfulness of its error in relying on the invalid ground that it did.  By failing to include these grounds in the PWNs—as it should have—and instead shutting down the entire process on an invalid ground, the District "significantly impeded [Parent's] *opportunity* to participate in the decisionmaking process regarding the provision of a free appropriate public education to [her] child."  20 U.S.C. § 1415(f)(3)(E)(ii)(II) (emphasis added).[1]

Parent did not want—and was not legally obligated—to re-enroll Student in a public school *before* working out the parties' disagreements over an IEP for Student.  It seems

---

[1] This prejudicial deprivation of the "opportunity" to participate in the IEP process suffices to reverse the judgment in the District's favor.  That reversal would vitiate any ability to rely on the District's alternative grounds and would also vitiate the remaining factual findings made in support of them.

obviously prejudicial for the District to have discontinued IEP meetings and evaluations until *after* Parent would agree to the possible re-enrollment that those meetings and evaluations were designed to facilitate.　The IDEA's emphasis on "compliance with procedures giving parents . . . a large measure of participation at every stage of the administrative process" is meant, among other things, to prevent such a Catch-22.　*See Board of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 205–06 (1982).

For these reasons, I would reverse the district court's judgment and remand the matter to that court with instructions to remand to the administrative agency with instructions to fashion an appropriate remedy for the District's prejudicial IDEA violation.　To the extent that the majority holds otherwise, I respectfully dissent.